# EXHIBIT 1

Michael A. Iaconelli, Esquire
KLEHR | HARRISON | HARVEY | BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, NJ 08002
Telephone: (856) 486-7900
E-Mail: miaconel@klehr.com

*Attorneys for Plaintiffs,*
*Trocki Hotels, LP, Trocki Holding, Inc.,*
*Ira Trocki and Shari Trocki*

RECEIVED and
FILED

AUG 16 2010

ATLANTIC COUNTY
LAW DIVISION

| | |
|---|---|
| Trocki Hotels, LP, Trocki Holding, Inc.,<br>Ira Trocki and Shari Trocki,<br><br>Plaintiffs,<br><br>vs.<br><br>Choice Hotels International, Inc.,<br><br>Defendant. | : SUPERIOR COURT<br>: OF NEW JERSEY<br>: LAW DIVISION<br>: ATLANTIC COUNTY<br>: DOCKET NO. L-4370-10<br>:<br>: *Civil Action*<br>:<br>: **COMPLAINT** |

Plaintiffs, Trocki Hotels, LP, a New Jersey Limited Partnership, Trocki Holding Inc.,

its General Partner, Ira Trocki, individually, and Shari Trocki, individually (hereinafter

collectively referred to as "Franchisee"), bring this Complaint against defendant, Choice

Hotels International, Inc., a Delaware Corporation (hereinafter "Choice"), and states as

follows:

## I. INTRODUCTION AND PARTIES

1.     This Complaint arises out of a franchise agreement between the parties and

claims breach of express and implied contract covenants, and violations of the New Jersey

Franchise Practices Act, NJSA §56:10-1 *et seq*. (the "Franchise Act").

2.     Plaintiffs are individual residents of New Jersey and/or duly constituted

business entities formed under the laws of the State of New Jersey, having an address at 631

Tilton Road, Northfield, New Jersey 08225.

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

3.     Upon information and belief, defendant Choice is a corporation formed under the laws of the State of Delaware, with a registered address and principal place of business located at 10750 Columbia Pike, Silver Spring, Maryland 20901.

## II.  JURISIDICTION AND VENUE

### Jurisdiction

4.     This Court has jurisdiction over defendant inasmuch as: (i) defendant has regularly conducted business in the State of New Jersey; (ii) defendant has had systematic and continuous contacts with the residents of, and in, the State of New Jersey; and (iii) the events giving rise to this action took place in the State of New Jersey, and the nature of relief sought herein permits adjudication in this forum.

### Venue

5.     Venue for this action is properly laid in Atlantic County pursuant to Rules 4:3-2(a)(3) and 4:3-2(b) of the New Jersey Rules of Civil Procedure because: (i) the within cause of action arose in Atlantic County; and (ii) plaintiffs reside, and/or have a principal place of business located, in Atlantic County.

## III.  FACTUAL BACKGROUND

### A.  Creation of the Comfort Inn Franchise

6.     On or about May 6, 1987, Choice and an original franchisee (the "Original Franchisee") entered into a Franchise Agreement, with addendum (the "Franchise Agreement"), pursuant to which the Original Franchisee was granted the right to operate a Comfort Inn hotel at 7095 Black Horse Pike, West Atlantic City, New Jersey 08232 (the "Comfort Inn Franchise").

7.     Certain additional agreements were entered into in connection with Choice's granting of the Comfort Inn Franchise to the Original Franchisee, including a Technology

2

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

Kiehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

Services Agreement And Software License, whereby Choice granted the Original Franchisee a license to use Choice's reservation system and related software in connection with the operation of the Comfort Inn Franchise.

8.      Thereafter, on November 21, 2003, Choice and the Franchisee entered into an Assumption Agreement whereby Franchisee permanently assumed the obligations of the Original Franchisee under the Franchise Agreement and the Technology Agreement And Software License.  (A true and correct copy of the Assumption Agreement is attached as Exhibit "1" hereto -- to which are attached the Franchise Agreement and the Technology Agreement And Software License as Exhibits "A" and "B," respectively -- and is incorporated by reference herein.)

9.      The Assumption Agreement provides that May 21, 1987 would be the "Commencement Date" of the Comfort Inn Franchise for purposes of determining the term of the Franchise Agreement and contract requirements for written notice of termination.

10.      The Assumption Agreement also provides that all notices pertaining thereto, or to the Franchise Agreement, were to be sent to "Dr. Ira Trocki ("Designated Representative"), 631 Tilton Road, Northfield, New Jersey 082225" (sic).

11.      By operation of law, the Franchise Act is an implied term of the Franchise Agreement, such that a violation of the Franchise Act also constitutes as a breach of contract under the Franchise Agreement.

12.      Moreover, the covenants of good faith and fair dealing are implied into the Franchise Agreement.

## B. Choice's Illegal Termination

13.      At all times relevant hereto, the Franchisee complied with all of its obligations under the Franchise Agreement.  As is customary in the industry, Choice

periodically conducted Quality Assessment Reviews ("QAR") of the Comfort Inn Franchise. Until the events that gave rise to this lawsuit, the Franchisee typically passed all brand standards imposed by Choice.  (Attached as Exhibit "2," and incorporated by reference herein, is a true and correct copy of a letter dated August 27, 2004, in which Choice congratulated the Franchisee because "all areas evaluated … currently pass[ed] brand standards.")

14.     At some point prior to May of 2006, Choice decided to consider awarding a competing Comfort Inn franchise to the owner of a Hampton Inn that conducted business right next door to the Comfort Inn Franchise at 7079 Black Horse Pike, West Atlantic City, New Jersey 08232.

15.     After receiving an application to install a competing Comfort Inn next to the Comfort Inn Franchise, Choice, upon information and belief, decided to terminate the Franchisee's Comfort Inn Franchise, and replace it with the new applicant.

16.     On May 15, 2006, shortly before the 19th anniversary of the Commencement Date of the Franchise Agreement, Choice sent Franchisee a Notice of Termination notifying Franchisee of Choice's intent to terminate the Comfort Inn Franchise effective May 21, 2007.  (A true and correct copy of this Notice of Termination is attached hereto as Exhibit "3," and is incorporated by reference herein.)

17.     The Notice of Termination identifies no reason for the termination of the Comfort Inn Franchise.  (See Exhibit "3.")  The Notice of Termination also violates the Franchise Agreement in that Choice was not permitted to provide such notice until the 20th anniversary of the Commencement Date.  (See Exhibit "1.")

18.     The Franchisee objected to Choice's termination of the Comfort Inn Franchise.

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

4

19.     On May 24, 2006, Choice sent the Franchisee notice of its consideration of an application that it received from "Applicant: COMFORT INN-NJ230" in accordance with the company's Impact Policies and procedures.  (A true and correct copy of this notice is attached hereto as Exhibit "4," and is incorporated by reference herein.)

20.     As permitted by Choice's Impact Policies and procedures, the Franchisee objected to a competing Comfort Inn being located right next door to its Comfort Inn Franchise. Under those policies, Choice was not legally permitted to install a competing Comfort Inn Franchise at the proposed location.

## C.  Choice Begins To Manufacture A "Pre-Text" To Terminate

21.     Thereafter, in conjunction with its consideration of the competing Comfort Inn application, Choice began a campaign of harassment and intimidation of the Franchisee which the Franchisee believes, and therefore avers, was intended to manufacture an artificial and false record that Choice intended to invoke as a pretextual basis for terminating the Comfort Inn Franchise, allegedly for cause.  Choice then sent Franchisee a series of Notices of Default on May 17, 2006, May 24, 2006, two on June 19, 2006, June 21, 2006 and June 30, 2006.  (True and correct copies of these Notices of Default are collectively attached hereto as Exhibit "5," and are incorporated by reference herein.)

22.     Each of the Notices of Default contained within Exhibit 5 required that the Franchisee make a substantial capital investment after having received a "Notice of Default," and unreasonably required that Franchisee cure the alleged "default" within 30 days. (Id.)

23.     On August 1, 2006, Choice conducted a QAR of the Comfort Inn Franchise. Two days later, on August 3, 2006, Choice removed the Franchisee from Choice's reservation system without notice to Franchisee.  On August 4, 2006, Choice sent

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

Franchisee a second Notice of Termination, effective October 7, 2006. (A true and correct copy of the Notice of Termination dated August 4, 2006 is attached hereto as Exhibit "6," and is incorporated by reference herein.)

24.    After the termination of the Comfort Inn Franchise, the Franchisee, on its own behalf and unrepresented by counsel, engaged in ongoing and persistent negotiations with members of Choice's Office of General Counsel, the purpose of which was to avoid litigation by, among other things, awarding the Franchisee a replacement Choice franchise.

25.    Choice intentionally and actively induced Franchisee to believe that Choice would compensate Franchisee for the termination of its Comfort Inn Franchise and related economic losses.

26.    It was the Franchisee's further understanding from these negotiations that Choice was engaging in a good faith effort to compensate the Franchisee for Choice's breach of the Franchise Agreement and associated violations of the Franchise Act, and that litigation would not be necessary. The foregoing negotiations ended in and around the end of May, 2010.

27.    During negotiations with Choice, the Franchisee was forced to replace the Comfort Inn Franchise with a Red Lion Inn. From the Commencement Date of the Comfort Inn Franchise to the date of termination, the Comfort Inn Franchise operated at a substantial annual net profit, whereas the Red Roof Inn operated at an annual net loss.

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

## IV.  CAUSES OF ACTION

## COUNT ONE

*(Violation of the Franchise Act, NJSA §56:10-1 et seq.)*

28.    The allegations set forth above in paragraphs 1-27 are incorporated by reference.

29.    The Comfort Inn Franchise was a "Franchise" within the meaning of the Franchise Act, and Franchisee is a "franchisee" within the meaning of the Franchise Act. They are therefore entitled to all of the protections afforded by the Franchise Act.

30.    At all relevant times, the Franchisee substantially complied with the requirements imposed upon it by the Franchise Agreement.

31.    Choice terminated, canceled or failed to renew the Comfort Inn Franchise without good cause in violation of, *inter alia*, §5 of the Franchise Act; NJSA §56:10-5.

32.    Choice effectively terminated, canceled or failed to renew the Comfort Inn Franchise on a pretextual basis without providing the Franchisee with an opportunity to cure any alleged default.

33.    Choice imposed unreasonable standards of performance upon the Franchisee in violation of, *inter alia*, §7 of the Franchise Act; NJSA §56:10-7.

34.    Choice failed to provide proper notice of termination and/or default to the Franchisee with respect to the Comfort Inn Franchise.

WHEREFORE, plaintiffs pray that judgment be entered in their favor and against defendant in an amount not less than the going concern value of the Comfort Inn Franchisee on the date of termination, as well as any and all actual out of pocket expenses and costs resulting from the termination of the Comfort Inn Franchise including, but not limited to, annual operating losses and the cost of the transition from one franchise to another,  together

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

with interest, costs of suit, attorneys' fees, and all such other relief that the Court deems equitable, just and proper.

## COUNT TWO

*(Breach of Contract—Franchise Act, NJSA §56:10-1 et seq.)*

35.     The allegations set forth above in paragraphs 1-34 are incorporated by reference.

36.     The Franchise Act is made part of the Franchise Agreement as though set forth in full therein.   Any violation of the Franchise Act is a breach of the Franchise Agreement.

37.     Choice breached the Franchise Agreement by, *inter alia*, terminating, canceling or failing to renew the Comfort Inn Franchise without good cause,  by imposing unreasonable standards of performance upon the Franchisee, by effectively terminating the Comfort Inn Franchise without notice and opportunity to cure, and by failing to provide the notice required by the Franchise Act and/or the Franchise Agreement.

WHEREFORE, plaintiffs pray that judgment be entered in their favor and against defendant in an amount not less than the value of the Comfort Inn Franchise on the date of termination, as well as any and all actual out of pocket expenses and costs resulting from the termination of the Comfort Inn Franchise including, but not limited to, annual operating losses and the cost of the transition from one franchise to another, together with interest, costs of suit, attorneys' fees, and all such other relief that the Court deems equitable, just and proper.

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

## COUNT THREE

### *(Breach of Contract—Good Faith and Fair Dealing)*

38.     The allegations set forth above in paragraphs 1-37 are incorporated by reference.

39.     Choice has breached the implied covenants of good faith and fair dealing by, *inter alia*, the following:

      a.     considering the placement of a competing Comfort Inn next door to the Comfort Inn Franchise, and thereafter deciding to evict the Franchisee from the Comfort Inn network because Choice preferred the new applicant;

      b.     artificially and without basis harassing and intimidating the Franchisee with notices of termination and default in order to expel Franchisee from the Choice franchise system, and to replace it with another Comfort Inn next door to the Franchisee's location;

      c.     failing to honor its obligations under the Franchise Act by terminating, canceling or failing to renew the Comfort Inn Franchise without good cause;

      d.     imposing unreasonable standards of performance upon the Franchisee;

      e.     failing to support the Franchisee;

      f.     arbitrarily and without notice restricting Franchisee's access to the Choice reservations system; and

      g.     engaging in protracted negotiation with the Franchisee after the termination of the Comfort Inn Franchise, and without a good faith purpose of compensating the Franchisee for the loss of its Comfort Inn Franchise.

WHEREFORE, plaintiffs pray that judgment be entered in their favor and against defendant in an amount not less than the going concern value of the Comfort Inn Franchise on the date of termination, as well as any and all actual out of pocket expenses and costs resulting from the termination of the Comfort Inn Franchise including, but not limited to, annual operating losses and the cost of the transition from one franchise to another, together

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

with interest, costs of suit, attorneys' fees, and all such other relief that the Court deems

equitable, just and proper.

Dated: August 13, 2010

Michael A. Iacohehi, Esquire
KLEHR|HARRISON|HARVEY|BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002
(856) 486-7900

*Attorneys for Plaintiffs,*
*Trocki Hotels, LP, Trocki Holding, Inc.,*
*Ira Trocki and Shari Trocki*

*Of Counsel:*
Don P. Foster, Esquire
KLEHR|HARRISON|HARVEY|BRANZBURG LLP
1835 Market Street
Philadelphia, Pennsylvania 19102

10

### Certification Pursuant to R.4:5-1

Pursuant to <u>R.</u> 4:5-1 of the New Jersey Rules of Civil Procedure, it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge, information and belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties who should be joined in the within action.

Dated:  August 13, 2010

Michael A. Iaconelli, Esquire
KLEHR|HARRISON|HARVEY|BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002
(856) 486-7900

*Attorneys for Plaintiffs,*
*Trocki Hotels, LP, Trocki Holding, Inc.,*
*Ira Trocki and Shari Trocki*

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

11

## <u>Designation of Trial Counsel</u>

Pursuant to the provisions of <u>R.</u> 4:25-4 of the New Jersey Rules of Civil Procedure, the Court is advised that Michael A. Iaconelli, Esquire is hereby designated as trial counsel.

Dated:  August 13, 2010

Michael A. Iaconelli, Esquire
KLEHR|HARRISON|HARVEY|BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002
(856) 486-7900

*Attorneys for Plaintiffs,*
*Trocki Hotels, LP, Trocki Holding, Inc.,*
*Ira Trocki and Shari Trocki*

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

## Demand for Trial By Jury

Plaintiffs demand a trial by jury of no fewer than six persons as to all issues so triable, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated:  August 13, 2010

Michael A. Iaconelli, Esquire
KLEHR|HARRISON|HARVEY|BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002
(856) 486-7900

*Attorneys for Plaintiffs,*
*Trocki Hotels, LP, Trocki Holding, Inc.,*
*Ira Trocki and Shari Trocki*

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

13

## Notice Of Preservation Of Evidence

Plaintiffs hereby demand and request that defendant take all necessary actions to ensure the preservation of all documents, communications (whether electronic or otherwise), items and things in its possession or control, or in the possession of any person or entity over which it has control, or from whom it has access to including, without limitation, any documents, items, or things which may in any manner be relevant to or relate, in any manner whatsoever, to the subject matter of the claims, causes of action, anticipated defenses and/or allegations set forth in this Complaint, and any subsequent pleading filed by any party to this action, or which is reasonably calculated to lead to the discovery of admissible evidence in this action.

Dated:  August 13, 2010

Michael A. Iaconelli, Esquire
KLEHR|HARRISON|HARVEY|BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002
(856) 486-7900

*Attorneys for Plaintiffs,*
*Trocki Hotels, LP, Trocki Holding, Inc.,*
*Ira Trocki and Shari Trocki*

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

14

## <u>Certification Pursuant to R.1:38-7(b)</u>

I certify that all confidential personal identifiers have been redacted from documents now submitted to the court, if any, and will be redacted from all documents submitted in the future in accordance with <u>R</u>.1:38-7(b) of the New Jersey Rules of Civil Procedure.

Dated:  August 13, 2010

Michael A. Iaconelli, Esquire
KLEHR|HARRISON|HARVEY|BRANZBURG LLP
(A Pennsylvania Limited Liability Partnership)
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey 08002
(856) 486-7900

*Attorneys for Plaintiffs,*
*Trocki Hotels, LP, Trocki Holding, Inc.,*
*Ira Trocki and Shari Trocki*

Klehr Harrison Harvey Branzburg LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-2220

15

NJ403A
COMFORT INN

### ASSUMPTION AGREEMENT

THIS ASSUMPTION AGREEMENT, is made by and between **Trocki Hotels, LP, a New Jersey limited partnership, Trocki Holding, Inc., its General Partner, Individually, Ira Trocki, Individually and Shari Trocki,** Individually, jointly and severally ("Successor Franchisee") and CHOICE HOTELS INTERNATIONAL, INC., a Delaware Corporation ("Choice").

<u>WITNESSETH</u>

A)   On or about May 6, 1987, Choice and Arjay/Widell Real Properties, a New Jersey General Partnership ("Original Franchisee") entered into a Franchise Agreement and addendum ("Franchise Agreement") pursuant to which Original Franchisee was granted the right to operate a **COMFORT INN** hotel at **7095 Black Horse Pike, West Atlantic City, New Jersey** 08232 ("Hotel"),  a copy of which is attached hereto as *Exhibit A*.

B)   Certain additional agreements were entered into in connection with the granting of the **COMFORT INN** franchise, including a Technology Services Agreement and Software License as *Exhibit B* (all additional agreements together with the Franchise Agreement are collectively referred to as the ("Franchise Documents").

C)   On or about  *2-18-98*  the Original Franchisee filed a petition in the United States Bankruptcy Court (the "Court").  During the bankruptcy proceedings for the Original Franchisee, HFC Commercial Realty, Inc., a Delaware corporation  ("Assignor") acquired the Hotel and assumed all of the Original Franchisee's rights and obligations under the Franchise Agreement by way of court order as *Exhibit C.*

D)   On  *Aug 25 '03*  Successor Franchisee acquired the Hotel.

E)   On or about August 25, 2003, Choice, and Successor Franchisee entered into a temporary Assignment and Assumption of Franchise Agreement, whereby Assignor assumed all of the rights of Original Franchisee under the terms of the Franchise Documents, a copy of which is attached hereto as Exhibit C.

F)   Successor Franchisee desires to assume permanently the obligations of Franchisee contained in the Franchise Agreement, as amended, and the Technology Services Agreement and Software License.

G)   Choice is willing to consent to such assumption by Successor Franchisee on the terms and conditions of this Assumption Agreement.

H)   The "Commencement Date", as defined in Paragraph 3(a)(1) of the Franchise Agreement is May 21, 1987.

P:\aagreemulti2002\NJ403Agree
10/23/2003

NOW, THEREFORE, for and in consideration of the premises and of the mutual agreements herein contained, Choice and Successor Franchisee hereby agree as follows:

1.  **Assignment.**  Franchisee assigns to Successor Franchisee, its permitted successors and assigns, all of Franchisee's interest in the Franchise Documents, effective as of the Date of Possession.

3.  **Assumption.**  Successor Franchisee accepts the assignment and agrees to assume all of Franchisee's rights and obligations under the Franchise Documents, including any and all outstanding financial obligations thereunder existing as of the date hereof, and to carry out, perform and satisfy the same.

> Successor Franchisee (Assignee) does not and shall not assume any obligations, responsibilities or indemnifications arising from the Franchise Agreement that accrued prior to August 25, 2003.
>
> IMT    ST

4.  **Payment.**  Successor Franchisee will pay to Choice a nonrefundable assumption fee of $2,500.00 on signing of this Agreement.

5.  **Representations and Warranties.**  Successor Franchisee represents and warrants to Choice, as a material inducement for Choice to approve the assignment, that with respect to it and its constituent partners:

(a)    The equity owners of Successor Franchisee are Trocki Holding, Inc., its General Partner, Ira Trocki and Shari Trocki.

(b)    Successor Franchisee is duly organized, validly existing and in good standing under the laws of its state of organization. It has the power to own its properties and conduct its business and is duly qualified to do business in the state of New Jersey.

(c)    Successor Franchisee has the power to execute, deliver, and carry out the terms of this Agreement. It has taken all necessary action with respect thereto. This Agreement has been duly authorized, executed and delivered by it and constitutes the valid, legal and binding agreement and obligation in accordance with the terms of this Agreement.

(d)    Performance by Successor Franchisee of its obligations under this Agreement will not result in:  (i) the breach of any term of, or be a default under, any term of its Partnership Agreement, other organizational documents, contract, agreement or other commitment to which it is a party or by which it is bound, or be an event that, with notice, lapse of time or both, would result in a breach or event of default; nor (ii) result in the violation by it of any statute, rule, regulation, ordinance, code, judgment, order, injunction, decree or other legal obligation.

(e)    Successor Franchisee is the true owner of, and record holder of title to, the real estate located at **7095 Black Horse Pike, West Atlantic City, New Jersey 08232,** which is the site on which the Hotel will be located, as contemplated by this Agreement. Successor Franchisee will be the mortgagor of record of the real estate on which the Hotel will be located.

(f)    Choice has not made any representations or warranties regarding the assignment not expressly contained in this Agreement, nor has Choice made any representations or warranties regarding the success, potential revenues, costs or profits, directly or indirectly, not expressly contained in the COMFORT INN Uniform Franchise Offering Circular delivered to Successor Franchisee before it enters into this Agreement, and that no officer, director or employee of Choice is authorized to do otherwise.

6.    **No Modifications.**  Except as may be expressly provided to the contrary in this Agreement, the Franchise Documents will continue in full force and effect without modification or waiver of any of Choice's rights in the Franchise Documents.

7.    **UFOC Receipt.**  Successor Franchisee acknowledges that it received from Choice the current COMFORT INN Uniform Franchise Offering Circular.  Successor Franchisee also acknowledges that it received any franchise disclosure document required under the laws of the state where Successor Franchise was domiciled at the time or where the Hotel is located or to be located.

8.    **Notices.**  All notices pertaining to this Agreement or to the Franchise Agreement must be sent by registered or certified mail.  Notices to Choice must be sent to **Choice Hotels International, Inc.; Attention: General Counsel, 10750 Columbia Pike, Silver Spring, Maryland 20901,** and notices to Successor Franchisee must be sent to **Dr. Ira Trocki** ("Designated Representative"); **631 Tilton Road, Northfield, New Jersey 082225.** Either Choice or Successor Franchisee may change the address by written notice to the other party. Successor Franchisee authorizes the Designated Representative to receive Choice's written notices to Successor Franchisee as its agent.  Any notice by registered or certified mail or by courier service is deemed given and received at the date and time of sending.

9.    **Entire Agreement.**  This Agreement represents the entire understanding and agreement among the parties with respect to the subject matter of this Agreement, and supersedes all other negotiations, understandings and representations (if any) made by the parties.

10.    **Choice's Consent.**  Choice, as Franchisor under the Franchise Agreement, consents to the Assignment from **HFC Commercial Realty, Inc. to Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki, Shari Trocki,** and confirms that the Assignment is not a default under the Franchise Agreement.

11.    This Assumption Agreement shall supercede and replace the Assignment and Assumption of Franchise Agreement, dated August 25, 2003.

P:\aagreemulti2002\NJ403Agree
10/23/2003

IN WITNESS WHEREOF, the parties have set their hands and seals as of the _21st_ day of _November_, 2003.

Attest:

Name: Kevin M. Rooney
Title: Assistant Secretary

_11/21/03_

**Choice Hotels International, Inc.,**
a Delaware corporation

By: _____ L.S.
Name: Michael J. DeSantis
Title: Senior Vice President

**SUCCESSOR FRANCHISEE:**

**Trocki Hotels, LP**, a New Jersey limited partnership, **Trocki Holding, Inc.**, its General Partner, Individually, **Ira Trocki**, Individually and **Shari Trocki**, Individually, jointly and severally

Witness:

Name:

**Trocki Hotels, LP**, a New Jersey limited partnership

By: **Trocki Holdings, Inc.**, its General Partner

By: _____ L.S.
Name: _____
Title: _____

Date: _____

SEE NEXT PAGE FOR ADDITIONAL SIGNATURES

Witness:

_Kimberly K. Monzo_
Name:

**Trocki Holding, Inc., Individually**

By: _____ L.S.
Name: _Dr Ira Troc_
Title:  President

Date: _11-17 03_

Witness:

_Kimberly K. Monzo_
Name:

**Ira Trocki**, Individually

_____ L.S.

Date: _11-13 03_

Witness:

_Kimberly K. Monzo_
Name:

**Shari Trocki**, Individually

_Shari S Trocki_ L.S.

Date: _11-13 03_

P:\aagreemulti2002\NJ403Agree
10/23/2003

Page 5 of 5

NJ-403 QCN

EXHIBIT A

**Comfort Inn**

# QUALITY INNS INTERNATIONAL, INC.

## FRANCHISE AGREEMENT

THIS AGREEMENT entered into in Silver Spring, Maryland as of the __6th__ day of __May__ , 19 __87__, by and between Quality Inns International, Inc., a Delaware corporation (hereinafter referred to as "Quality") and __Arjay/Widell Real Properties, a New Jersey General Partnership__

(hereinafter referred to as "Franchisee"):

### WITNESSETH:

WHEREAS, Quality, as the result of the expenditure of time, effort and money, has developed a plan and system for providing to the travelling public on an international basis lodging of a high standard of service, efficiency, courtesy and cleanliness, utilizing distinctive identification schemes, standards, specifications and Proprietary Marks (as hereinafter defined) and information, all of which are referred to in this Agreement as the System; and

WHEREAS, Franchisee recognizes and agrees that participation in the advance reservation system, display of the distinctive Comfort Inn Sign and participation in the business referral and credit card arrangements are vital, invaluable and necessary components of the System; and

WHEREAS, Franchisee recognizes and agrees that Quality has the exclusive right, except as herein provided, to the ownership and use of the names COMFORT INN and COMFORT INNS either alone or in combination or association with the signs, emblems, trade names, trademarks, and service marks used in connection with the System and any other name, sign, emblem, trade name, trademark or service mark subsequently adopted by Quality and authorized for use in connection with the System (herein referred to as "Proprietary Marks"); and

WHEREAS, Franchisee wishes to be licensed by Quality to use the System at the Franchised Inn (as hereinafter defined) upon the terms and conditions contained herein; and

WHEREAS, Franchisee understands the importance of Quality's standards of service, efficiency, courtesy and cleanliness to the value of the System and the necessity of operating and maintaining the Franchised Inn in conformity with the System;

THEREFORE, Quality and Franchisee, in consideration of the premises and the mutual agreements herein contained, do hereby agree as follows:

1. GRANT OF LICENSE. Quality hereby grants to Franchisee, subject to the terms and conditions herein, a non-exclusive license to use the System in the operation of one hotel or motel at the following location only:     COMFORT INN West
     Black Horse Pike at Dover Place
     West Atlantic City, New Jersey

(which hotel or motel is herein referred to as the "Franchised Inn").

2. FEES and ROYALTIES. Franchisee covenants and agrees to make payments to Quality as follows:

(a) *Initial Fee.* Concurrent with the execution of this Agreement, Franchisee agrees to pay to Quality a non-refundable, initial fee in the amount of $__5,000__ based upon Franchisee's representation that the Franchised Inn contains or shall contain __197__ sleeping rooms (said number is hereinafter referred to as the "Specified Room Count"). Quality acknowledges receipt of $__5,000__.

(b) *Continuing Franchise Fee.*

(1) For the first calendar month in which the Franchised Inn commences operations hereunder, Franchisee agrees to pay to Quality a continuing franchise fee equal to $9.00 times the Specified Room Count.

(2) For each month subsequent to the first calendar month of operation, Franchisee agrees to pay to Quality a continuing franchise fee equal to 3% of the Gross Room Revenues for the preceding month.

(c) *Marketing Assessment.*

(1) Franchisee agrees to pay monthly a marketing assessment: for the first calendar month in which the Franchised Inn commences operations hereunder, a sum equal to $3.00 times the Specified Room Count; for each month subsequent to the first calendar month of operation, a sum equal to 1% of the preceding month's Gross Room Revenues plus 20 cents per day times the Specified Room Count. This fee shall abate during any period of inoperability of the Franchised Inn caused by fire, acts of God or governmental regulation.

(2) Franchisee agrees that Quality may from time to time increase or decrease the marketing assessment to such extent as may be reasonably appropriate to take into account the advertising, publicity, public relations, marketing and similar needs of the System, or fluctuations in the value of the dollar.

(3) Franchisee is solely responsible for conducting local advertising and promotion of the Franchised Inn and the expenses thereof. Franchisee agrees that the form and content of said local advertising and promotion will conform to standards prescribed by Quality as may be amended from time to time.

(d) *Reservation Services Fee.* Franchisee agrees to pay monthly a reservation services fee: (1) for the first calendar month in which the Franchised Inn commences operations hereunder, a sum equal to $3.00 times the Specified Room Count; (2) for each month subsequent to the first calendar month of operation, a sum equal to 1% of the preceding month's Gross Room Revenues. In addition, Franchisee agrees to pay, monthly, a reservations delivered charge equal to $1.00 per room night confirmed through Quality's reservation system.

Franchisee further agrees that Quality may, at any time and from time to time, increase or decrease any or all of the reservations fees, as Quality may be reasonably appropriate to take into account increases or decreases in Quality's cost of providing an advance reservation system and that Quality may change the method of calculating such fee as Quality may determine. The reservation services fee shall abate during any period of inoperability of the Franchised Inn caused by fire, acts of God, or government regulation.

(e) *Monthly Reports.* Franchisee agrees to file with Quality, within ten (10) days after the close of each calendar month, a statement in the form prescribed by Quality showing monthly Gross Room Revenues and the number of rooms rented for such monthly period, such statements to be certified to be true and accurate by Franchisee or its duly appointed agent. If not timely submitted, Franchisee agrees to pay a late charge equal to 1½% of the amounts due under paragraph 2(b) for each month or fractional part of delinquency.

(f) *Annual Reports.* Franchisee will furnish to Quality, within 90 days after the end of each fiscal year of the Franchised Inn, a statement of the Franchised Inn's Gross Room Revenues for such fiscal year certified to be true and accurate by Franchisee or its duly appointed agent.

(g) *Payments and Delinquency Charge.* Quality will bill Franchisee on or about the 15th day of each month for all amounts due for the current month. Franchisee agrees to pay, without offset, such amounts by the 15th day of the following month and, if not so paid, the account shall be considered delinquent. Amounts not paid when due, in addition to being in breach of this Agreement, will accrue interest from the date of delinquency at 1½% per month, but not to exceed the maximum interest permitted by applicable laws.

(h) *Definition of "Gross Room Revenues."* The term "Gross Room Revenues" as used herein shall include all revenues derived from the rental, sale, use or occupancy of sleeping rooms or meeting rooms in the Franchised Inn, including cash and credit transactions, whether or not collected by Franchisee, but excluding sales taxes or other taxes which may be required by law to be collected from guests.

(i) *Audit of Books and Records of Franchised Inn.*

(1) Franchisee agrees to retain on the premises of the Franchised Inn for at least three years true and accurate accounts, books, records and data reflecting all particulars relating to room rentals and Gross Room Revenues; to allow Quality and its agents to examine and audit said accounts, books, records, and data during normal business hours; and to make photocopies of such accounts, books, records and data necessary and appropriate to such examination and audit.

(2) In the event an audit of said accounts, books, records and data shows the Franchisee to have underpaid continuing franchise fees required by paragraph 2(b) (2), Franchisee agrees to promptly pay to Quality such sums as have been underpaid, plus interest at 1½% per month or partial month (or if such amount is deemed to be in violation of applicable laws, then the maximum amount permitted thereunder). If the amount of continuing franchise fee underpaid shall be equal to or greater than 5% of the total continuing franchise fee during the period of such audit, Franchisee agrees to pay the reasonable costs of the audit in addition to the amount underpaid and interest thereon.

3.  TERM OF THIS AGREEMENT.
    (a) This Agreement shall be in effect until terminated as provided by this Agreement.
    (1)  Either party may terminate this Agreement on the 5th, 10th, 15th or 20th anniversary of the date of commencement of operations under this Agreement (the "Commencement Date") by giving no less than three (3) months prior written notice.
    (2)  After the twentieth (20th) anniversary of the Commencement Date, either party may terminate this Agreement on any subsequent anniversary date by giving no less than three (3) months prior written notice.
    (b) Except as otherwise required by applicable statutes or regulations, and upon the happening of any of the following contingencies and notwithstanding anything herein elsewhere provided, Quality may at its option and without further demands or notice immediately declare this Agreement and all rights and privileges hereunder cancelled and terminated:
    (1)  If, within twelve (12) months following substantial destruction of the Franchised Inn whether by fire or other cause, the Franchised Inn shall not be rebuilt and opened for business to the public in accordance with plans and specifications submitted by Franchisee to Quality and approved in writing by Quality.
    (2)  If, after ten (10) days written notice from Quality (or such longer period of time as may be required by applicable law), Franchisee has failed to cure a violation of paragraph 2.
    (3)  If, after thirty (30) days written notice from Quality (or such longer period of time as may be required by applicable law), Franchisee has failed to cure a violation of any provision, covenant, condition or agreement herein contained, other than as set forth in paragraph 3(b)(2) above, or contained in the Rules and Regulations as may be amended from time to time.
    (4)  If Franchisee shall make an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts as they become due, or if, within thirty (30) days after the commencement of any proceeding by or against Franchisee seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed, or if, within thirty (30) days after the appointment of any Trustee, receiver or liquidator of Franchisee or of all or any substantial part of the properties of Franchisee, such appointment shall not have been vacated, or if, the property real and personal of Franchisee shall be sold after levy thereupon by any sheriff, marshal or constable.
    (5)  If Franchisee shall abandon or discontinue operation of the Franchised Inn or if Franchisee loses possession of or loses the right to possession of all or a significant part of the Franchised Inn.
    (6)  If Franchisee materially violates any term or provision of any mortgage, deed of trust, lease, sublease, contract of tenancy or law respecting the Franchised Inn.
    (c) Franchisee may, at its option and without further demands or notices, immediately declare this Agreement and license and all rights and privileges hereunder cancelled and terminated if, after thirty (30) days written notice from Franchisee (or such period as may be required for notices from Quality to Franchisee pursuant to paragraph 3(b) if longer), Quality has failed to cure a violation of any provision, convenant, condition or agreement herein contained or contained in the Rules and Regulations as may be amended from time to time.
    (d) In the event of termination of this Agreement, Franchisee shall promptly pay to Quality, without offset, such sums as are due and owing on the effective date of termination, together with interest thereon as set forth in paragraph 2(g) accruing thereon until paid in full. In addition, in the event either party elects to terminate this Agreement due to a violation of any provision, covenant, condition or agreement herein contained or contained in the Rules and Regulations as may be amended from time to time, the breaching party (whether Quality or Franchisee) shall be liable to the other party for such damages suffered as a result of such violation. The foregoing obligations shall survive termination of this Agreement.

4.  QUALITY'S COVENANTS. Quality covenants and agrees:
    (a) To provide Franchisee a detailed Operations Manual dealing with the various aspects of motel management and administration, which Manual Franchisee acknowledges to be the exclusive property of Quality containing trade secrets and requiring confidential treatment and which may be revised from time to time.
    (b) To use the monies collected pursuant to paragraph 2(c) for the purpose of national and international advertising, promotion, publicity, marketing research and other marketing programs and related activities for the Comfort Inns name, reputation and System as Quality in its discretion may from time to time determine to be necessary and appropriate.
    (c) To use the monies collected pursuant to paragraph 2(d) to provide such advance reservation services as Quality in its discretion may from time to time determine to be necessary and appropriate.
    (d) To permit consultation, at reasonable times, with Quality's personnel in their respective fields of motel operations.
    (e) To list the Franchised Inn in such Directories of Comfort Inns as may be published by Quality from time to time.



page 3 of 9

5. FRANCHISEE'S COVENANTS. Franchisee covenants and agrees:

(a) To maintain and operate the Franchised Inn throughout the term hereof such that it will contain the following characteristics:

(1) A first-class Inn containing the number of sleeping rooms as provided in paragraph 2(a).

(2) A lobby and registration area meeting or exceeding the size requirements prescribed in the Rules and Regulations.

(b) To comply with the Rules and Regulations incorporated herein by reference and all future amendments thereto as may be made from time to time and to operate the Franchised Inn under the System in accordance with the terms and conditions of this Agreement and in accordance with the Rules and Regulations as may be amended from time to time. Franchisee shall be deemed to have maintained and operated a "first-class inn" if it shall have complied with the foregoing requirement.

(c) To strictly comply with all local, state and federal laws, ordinances, rules and regulations pertaining to operation of the Franchised Inn; to timely obtain and to keep in effect any and all permits, certificates or licenses as may be required for the lawful operation of the Franchised Inn.

(d) To promote use of Comfort Inns by the travelling public and not to encourage the use of other inns except where Comfort Inns are not reasonably available.

(e) To operate the Franchised Inn exclusively under the name "Comfort Inn" and to feature in all advertising matter, the name "Comfort Inn," together with the distinguishing characteristics of the System prescribed by Quality, or under such other name and Proprietary Marks as may be adopted by Quality for use in connection with the System, so that the Franchised Inn will be directly recognizable by the general public as an integral part of the System, and to diligently promote and make every reasonable effort to steadily increase business of the Franchised Inn.

(f) To permit Quality and its agents to inspect the Franchised Inn at all reasonable times.

(g) To cause the manager of the Franchised Inn to attend, at Franchisee's expense, training programs conducted by Quality.

(h) To obtain and display in a prominent location at the Franchised Inn one or more illuminated Comfort Inn Sign(s) meeting specifications prescribed by Quality unless prevented from so doing by applicable laws or regulations and to maintain the Comfort Inn Sign(s) in good working order.

(i) That, at the date hereof, it owns the Franchised Inn in fee or pursuant to a lease not inconsistent with the terms of this Agreement.

(j) To participate in the advance reservation system designated by Quality and to make reservations and to accept reservations in accordance with the Rules and Regulations and with procedures promulgated and/or changed by Quality from time to time.

(k) That it may not change the Specified Room Count except with the written consent of Quality.

(l) To obtain and install at the Franchised Inn a computerized send/receive terminal unit meeting specifications prescribed by Quality, and to maintain the terminal unit in good working order.

(m) To submit to Quality a copy of any prospectus concerning a private or public investment offering in respect of the Franchised Inn, and to obtain written approval from Quality prior to distributing any such prospectus, which approval shall not be unreasonably withheld.

6. PROPRIETARY MARKS. With respect to said System and the Proprietary Mark "Comfort Inn" and any other Proprietary Mark owned by Quality or developed in the future and designated for use in connection with the System:

(a) Franchisee acknowledges and will not contest Quality's interest in and exclusive right to said System and to the Proprietary Marks now used in connection with the System or subsequently adopted by Quality for use in connection with the System, and Franchisee further acknowledges and will not contest the exclusive right of Quality to grant to others the rights to their use.

(b) Franchisee agrees that its name, whether a corporation, joint venture, partnership, limited partnership or any other type of business organization, shall not contain the word "Quality" or the word "Comfort" and that it shall not use the word "Quality" or the word "Comfort" in the name of any corporation, joint venture, partnership, limited partnership or any other type of business organization which owns and/or operates any hotel, motel, motor inn or other hostelry, restaurant, or lounge or any business which sells or leases goods or services to any of the foregoing.

(c) Franchisee acknowledges that the Proprietary Marks are and shall remain the property of Quality and that its use of the Proprietary Marks shall inure to the benefit of Quality. Franchisee agrees to assign and convey to Quality upon request any such rights to the Proprietary Marks as Franchisee may acquire by reason of the use thereof.

(d) In the event applicable laws require or permit any registration by Franchisee of the Proprietary Marks, Franchisee agrees to comply with such laws and that such registration shall specify that Franchisee's use thereof is limited to the Franchised Inn and shall terminate with the termination of this Agreement and no such registration shall create in Franchisee any property right in or privilege to the use of the Proprietary Marks which could survive the termination of this Agreement.

(e) Franchisee agrees not to interfere with the use or registration of the Proprietary Marks by Quality or by any other franchisee of Quality.

(f) Franchisee agrees to promptly notify Quality of suits filed against Franchisee challenging the validity of any or all of the Proprietary Marks used in connection with the System and to cooperate in the defense of any such suits.

(g) Upon termination or expiration of this Agreement for any reason whatsoever, Franchisee shall immediately cease to be a Quality franchisee and Franchisee shall immediately cease to use, by advertising or in any manner whatsoever, any forms, manuals, slogans, signs, marks or symbols containing the Proprietary Marks or anything similar thereto or suggestive thereof used in connection with the Franchised Inn, and shall cease and refrain from holding the Franchised Inn out to the general public as a Comfort Inn or former Comfort Inn, and shall at its expense promptly make whatever changes may be necessary in any forms, manuals, signs, advertising and promotional material in order to comply with provisions of this paragraph.

(h) In the event that the Franchisee fails to discontinue use of the Proprietary Marks by the tenth day following termination or cancellation of this Agreement, then Quality, by its duly authorized agents may enter upon the premises of the Franchised Inn to accomplish such discontinuance without being deemed guilty of trespass or any other tort, and to cause such discontinuance to be effected at the expense of Franchisee. In the event of such failure to discontinue use of the Proprietary Marks, Franchisee agrees to pay to Quality as liquidated damages and not as a penalty $1.00 per day times the Specified Room Count after expiration of said ten (10) days for each use of the Proprietary Marks until use of the Proprietary Marks in connection with the Franchised Inn has been discontinued. Franchisee further agrees that Quality shall also be entitled to injunctive and equitable relief for any violation of the foregoing.

(i) Franchisee agrees that no express or implied right is conferred hereby or herein upon Franchisee to sublicense others to use Quality's Proprietary Marks or System.

7. REVISION OF RULES AND REGULATIONS. Quality expressly reserves the right to reasonably revise, amend, change and modify the System and the Rules and Regulations, or any part thereof, or to modify standards of quality of construction, furnishings, maintenance, repair and operation as may be necessary, in the judgment of Quality, to meet changes in the tastes and demands of the travelling public and to maintain the reputation of Quality and its franchises. Franchisee covenants and agrees to comply with any such reasonable revisions, amendments, changes or modifications thereto.

8. CONVEYANCE OF FRANCHISED INN; TRANSFER OF FRANCHISE AGREEMENT.

(a) Franchisee covenants and agrees to sell, lease, sublease or otherwise convey the Franchised Inn only upon the express condition that the buyer, lessee or successor-in-interest agrees in writing to assume (subject to Quality's approval as set forth in this paragraph) Franchisee's obligations under this Agreement for the unexpired term hereof.

(b) The franchise herein granted is personal to Franchisee and may not, in any manner, be sold, assigned, leased, sublet, pledged or otherwise transferred without Quality's prior written approval.

(c) As a condition precedent to such approval by Quality, the transferee shall execute an agreement assuming the obligations of Franchisee under this Agreement.

(d) As a further condition precedent to such approval by Quality, Franchisee shall fully disclose to Quality all information which may reasonably be requested by Quality (including, but not limited to, current financial information on and itemization of percentage ownership of all stockholders or partners or all joint venturers as the case may be, with their current residential addresses) for each of the proposed transferees and each of the stockholders or partners.

(e) As a further condition precedent to such approval by Quality, Franchisee shall pay all monies due and owing to Quality pursuant to the Agreement and the transferee shall pay a franchise transfer fee in accordance with Quality's then current policy. In the event that Quality is then offering for sale Comfort Inn franchises similar to this Agreement, said fee shall not exceed the initial franchise fee then being charged to new Franchisees for existing inns.

(f) Nothing contained herein shall obligate Quality to recognize any successor to Franchisee unless each such prospective successor is acceptable to Quality in every respect and such prospective successor complies with all of Quality's policies relating to transfers of this Agreement.

(g) The term "sold," "assigned," or "transferred" as used in this Agreement shall include any sale, assignment or transfer of 50% or more of the voting stock of a Franchisee which is a corporation (except a transfer by will or descent and distribution) and an increase of the number of outstanding shares of voting stock of the corporation which results in a change in ownership of 50% or more of the total voting stock of the corporation. If Franchisee is a partnership, no general partnership interest or 50% or more of limited partnership interests shall be sold, assigned or transferred without the prior written consent of Quality. Franchisee agrees to inform Quality of any such proposed sale, assignment or transfer as herein defined, and to request prior written consent to such proposed transaction. Attached hereto as Schedule A is a description of the legal organization of Franchisee (whether a corporation, partnership or other), the names and addresses of each person owning an interest in Franchisee and the percentage of such interest owned by such person. Franchisee agrees to notify Quality in writing whenever there is any change in the information contained in said Schedule A. In the event of any such sale, assignment or transfer as herein



defined without the prior written consent of Quality, Quality may at its sole discretion, immediately terminate this Agreement without prior demands or notices.

9. FUTURE ADDITIONS. No additional construction shall take place or substantial alterations be made with respect to the Franchised Inn or the Food and Beverage Operation unless the same is first approved in writing by Quality, and the plans and specifications therefor approved in writing by Quality. Upon completion of any such construction, the Specified Room Count shall include the additional sleeping rooms, and the revenues derived from their rental, sale, use or occupancy shall be used in the calculation of fees and charges payable by Franchisee under this Agreement.

10. LEASES. If at any time or times during the term of this Agreement, Franchisee leases or subleases the Franchised Inn, restaurant, coffee shop, cocktail lounge or any supplementary department of the Franchised Inn, such contract of tenancy shall contain the express covenant that the leased premises shall at all times throughout the term of tenancy be operated in accordance with the terms and conditions of this Agreement and the Rules and Regulations. Failure by such parties to comply with the terms and conditions of this Agreement or the Rules and Regulations shall be deemed a breach hereunder by Franchisee.

11. ENTIRE AGREEMENT. This Agreement contains the entire agreement of the parties and supersedes any previous agreements and no representation, inducement, promise or agreement, oral or otherwise, not embodied herein, shall be of any force or effect.

12. RELATIONSHIP OF PARTIES. Quality and Franchisee are not and shall not be considered as joint venturers, partners, agents or fiduciaries, of or for each other, and neither shall have power to bind or obligate the other except as specifically set forth in this Agreement.

13. WAIVER. Waiver of any particular default by Quality shall not affect or impair Quality's rights in respect of any subsequent default of the same or a different kind, nor shall any delay or omission of any right arising from any default affect or impair rights as to the same or any future default.

14. DUPLICATE ORIGINALS. This Agreement may be executed in any number of counterparts each of which, when executed and delivered, shall be deemed an original, but such counterparts together shall constitute but one and the same instrument.

15. SEVERABILITY. Should any part of this Agreement, for any reason be declared or held invalid, such invalidity shall not affect the validity of any remaining portion, which such remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated, and it is hereby declared to be the intention of the parties hereto that they would have executed the remaining portion of this Agreement without including any such part, parts, or portion which may, for any reason, be hereafter declared invalid.

16. TERMINATION OR MODIFICATION BY WRITTEN DOCUMENT. Neither this Agreement nor any provisions hereof may be changed, waived, discharged or terminated orally, but only by a written instrument signed by the party against which enforcement of the change, waiver, discharge or termination is sought.

17. SUCCESSORS AND ASSIGNS. All rights under this Agreement shall be binding on and inure to the benefit of the heirs, successors and assigns of Quality and Franchisee; provided, however that Franchisee agrees that its interest herein is transferable only as set forth in paragraph 8.

18. ORDINARY BUSINESS CONTROL. Quality agrees that nothing herein contained is to take away from Franchisee the right to exercise ordinary business control, as the same is commonly understood, to the extent that such exercise is consistent with the specific terms of this Agreement.

19. CONSTRUCTION OF FRANCHISE AGREEMENT. This Agreement shall be governed and construed according to the laws of the State of Maryland. All terms and words in this Agreement, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Agreement or any paragraph or clause herein may require, as if such words had been fully and properly written in the appropriate number and gender. Paragraph headings herein are for convenience only and are not to be construed as a part of this Franchise Agreement or in any way defining, limiting or amplifying the provisions hereof.

20. CUMULATION OF REMEDIES. The remedies granted herein to Quality are cumulative and are not intended to be exclusive of any other remedies to which it may be lawfully entitled in case of any breach or threatened breach of the terms and provisions hereof.

21. INSURANCE.

(a) Franchisee agrees to procure and maintain in full force and effect during the entire term of this Agreement, at Franchisee's sole cost and expense all-risk physical damage coverage, insuring the Franchised Inn for an amount not less than 80% of the replacement cost thereof. In the event of damage or destruction to the Franchised Inn, unless mortgagee recommends otherwise, the proceeds of any such insurance shall be used to repair or restore the Franchised Inn in accordance with plans and specifications prepared by Franchisee and approved in writing by Quality.

(b) Franchisee agrees to procure and maintain in full force and effect during the entire term of this Agreement, at Franchisee's sole cost and expense, insurance coverages protecting Franchisee, with the

Franchisee as the named insured and Quality Inns International, Inc., Manor Care, Inc., other subsidiaries of Manor Care, Quality's agents, servants, employees, officers, and directors as additional insureds, from and against all types of liabilities, including, but not limited to, personal injury and property damage of any nature, together with the costs and expenses of the defense and/or adjustment thereof, without exception, growing out of or in any way related to any operation or activity conducted under this Agreement and/or of the Franchised Inn, inclusive of, but not limited to, adjacent areas. These coverages shall provide limits of not less than $1,000,000 per occurrence and shall be accompanied by a waiver of subrogation. Included in the above coverage, but without limitation thereon, shall be Workers Compensation Insurance within the applicable statutory limits, Dram Shop Insurance if alcoholic beverages are served at the Franchised Inn, contractual liability, products and completed operations liability, personal injury liability, and independent contractors liability.

Quality may, from time to time, during the term of this Agreement, at its sole option, require that the minimum limits of insurance coverage, as aforesaid, be reasonably increased in any area in amounts determined solely by Quality and Franchisee hereby agrees to comply with such requirements, at Franchisee's sole cost and expense, and to deliver evidence of such compliance to Quality within ten (10) days of receipt of written demand for an increase in said insurance by or on behalf of Quality.

The foregoing insurance shall be placed with an insurance company or companies satisfactory to Quality.

(c)  Franchisee agrees to furnish to Quality within ten (10) days after the date of this Agreement, certificates of such insurance indicating thereon that Quality Inns International, Inc. is an additional insured, together with evidence showing that the premiums thereof have been paid. Additionally, evidence of renewal will be furnished Quality prior to the expiration date of such insurance. Such policy or policies shall stipulate that Quality shall receive a thirty (30) day written notice of cancellation or reduction in coverage or other alteration of the policy or policies.

(d)  In the event that Franchisee should fail to procure or maintain insurance in the types and amounts specified in this Agreement, or as may hereinafter be changed by Quality, Quality may, at its option, without notice, in addition to such other rights and remedies which it may have, procure and maintain such insurance and charge the full premiums thereof to Franchisee or it may immediately terminate this Agreement.

(e)  The procuring and maintenance of such insurance and the performance by Franchisee of Franchisee's obligations under this Agreement shall not relieve Franchisee of any liability imposed by or under the indemnity provisions set forth in paragraph 22 of this Agreement.

22.  INDEMNIFICATION. Franchisee agrees to defend, indemnify and hold harmless Quality, its officers, agents and employees from any loss, cost, damage, expense and liability, including reasonable attorneys' fees and any court costs, by reason of damage or loss, including personal injury, of whatsoever nature or kind, arising from or connected with the business of the Franchised Inn or any department thereof, or operated in conjunction therewith, or out of, or as a result of, any error, omission, act or failure on the part of Franchisee, its agents or employees, except where such loss, costs, damage, expense or liability is proximately caused by negligence of Quality, its agents or employees.

23.  ATTORNEYS' FEES. In the event that any action is filed to enforce the terms and conditions of this Agreement, the prevailing party (as determined by the Court) shall be entitled to recover from the other party reasonable attorneys' fees and court costs. The parties agree that any money judgment rendered hereon shall provide for interest at the rate referred to in paragraph 2(g).

24.  NOTICES.

(a)  All notices pertaining to this Agreement by one party to the other shall be sent by registered or certified mail addressed to Quality or Franchisee, as the case may be. If to Quality, Quality Inns International, Inc., Attn: General Counsel, 10750 Columbia Pike, Silver Spring, Maryland 20901 and if to Franchisee, _Arjay/Widell Real Properties, 120 St. Paul Street, Westfield, New_ _Jersey 07090_____

or such other address as either party shall designate by written notice to the other from time to time. Any notices complying with the provisions hereof shall be deemed to be given on the date of mailing.

(b)  If Franchisee or any successor of Franchisee is a corporation, partnership or joint venture, it shall furnish to Quality the name of a designated individual to act as representative of Franchisee in connection with all matters pertaining to this Agreement and Quality shall be entitled to rely on the acts and representations of such individual as being authorized by and for Franchisee, provided, however, that the designated individual may be changed from time to time by written notice to Quality. Franchisee designates _William J. Callnin_____ _____to be such representative.

25.  Quality agrees to spend one-half of the continuing franchise fees received by Quality from the initial Franchisee for the first twelve (12) months of the Franchised Inn's operation in the System, on

advertising of the Franchised Inn. Said advertising shall be developed by Quality and submitted to Franchisee for approval in advance. This advertising will be directed to radio, television, newspapers, and/or magazines. Sale or other conveyance of the Franchised Inn shall not extend the period of the foregoing advertising allowance. This advertising allowance is not applicable to inns owned or operated by Quality's affiliates.

26. Franchisee acknowledges that the System and this license relate only to the Comfort Inn System, that Quality operates a separate Quality Inn System of hotels and motels and a separate Quality Royale Hotel System of hotels.

27. Quality does not represent or guarantee that the Franchised Inn will receive a specified amount or number of reservations through the Quality System, or that the Franchised Inn's reservations or revenue will increase by a specified number, amount or percentage. By its execution hereof, Franchisee represents and acknowledges that it has relied on no representations, written or oral, except to the extent specifically set forth herein.

28. By the execution hereof, Franchisee acknowledges that it received from Quality the Basic Disclosure Document required by the Federal Trade Commission at the earlier of: (1) the Franchisee's first personal meeting with a representative of Quality to discuss the franchise sale; or (2) ten business days prior to the earlier of the execution of this Agreement or the payment of any consideration to Quality in connection with the sale of this franchise. Franchisee also acknowledges that it received, at the appropriate time, any disclosure document required under the laws of the state where Franchisee was domiciled at such time or where the Franchised Inn is to be located. Franchisee further acknowledges that Quality gave the completed execution copies of this Agreement and any related agreements to the Franchisee at least five business days prior to actual execution by the Franchisee.

IN WITNESS WHEREOF, the parties hereunto set their hands and seals as of the day and year first above written.

ATTEST:                                                QUALITY INNS INTERNATIONAL, INC.

_____          _____ L.S.
Everett F. Casey, Assistant Secretary          Frederick W. Mosser,
                    5/15/87                             Senior Vice President-Development


WITNESS/ATTEST:

                                                       ARJAY/WIDELL REAL PROPERTIES
                                                       A New Jersey General Partnership
                                                       _____
                                                                                              Franchisee

_____          By_____ L.S.
                                                       Ralph C. Del Priore
                                                       General Partner

_____          By_____ L.S.
                                                       John Wiley
                                                       General Partner


# SCHEDULE A


1. Legal organization of Franchisee; corporation, partnership or other:

    A New Jersey General Partnership.


2. Name(s) and address(es) of all person(s) owning interest in Franchisee and percentage of said person(s) interest:

    Ralph C. Del Priore          50%
    Marianne Court
    Alpine, New Jersey  07620
    General Partner


    John Wiley                   50%
    230 Sylvania Place
    Westfield, New Jersey  07090
    General Partner

ADDENDUM

COMFORT INN West (NJ403)
West Atlantic City, New Jersey
Page 1 of 2

The Franchise Agreement ("Agreement") dated May 6, 1987 as
amended, between Choice Hotels Franchising, Inc. (formerly Choice
Hotels International, Inc.), a Delaware corporation (Choice) and
Arjay/Widell Real Estate Properties, a New Jersey General
Partnership (Franchisee) is hereby amended by the following:

1.    Franchisee agrees to make the following changes and
additions to upgrade the Hotel to meet the Franchisor's standards
or to cure existing deficiencies in accordance with the following
schedule, at which time the Hotel will be reinspected:

### TO BE COMPLETED BY MAY 21, 1997

Guest Rooms:

a)    Install required electronic locks on all guest
room entrance doors.

2.    Franchisee accepts the restructured marketing fee of 2.1% of
the preceding month's gross room revenues including the
supplemental marketing fee effective May 21, 1997.

3.    Franchisee agrees to increase the hotel's insurance coverage
to comply with Choice's current insurance requirements by March
21, 1997.

4.    Franchisee acknowledges and agrees that the changes set
forth above are in addition to Franchisee's continuing obligation
to comply with the Rules and Regulations pursuant to paragraph
5(b) of the Agreement.

IN WITNESS WHEREOF, the parties hereunto have set their hands and
seals.

ATTEST:                          CHOICE HOTELS FRANCHISING, INC.
                                 (formerly CHOICE HOTELS
                                 INTERNATIONAL, INC.

                                 By _____ L.S.
_____        Name: Renee Killea-Krutsick
Everett F. Casey                 Title: GM/Hotel Operator
Assistant Secretary

Page 2 of 2
COMFORT INN West (NJ403)


WITNESS/ATTEST:                           ARJAY/WIDELL REAL PROPERTIES, a New
                                          Jersey General Partnership


_____         By _____ L.S.
                                             Ralph C. Del Priore,
                                             General Partner


_____         _____ L.S.
                                          John Wiley, General Partner



ATTEST:                                   CHOICE HOTELS FRANCHISING, INC.
                                          (formerly CHOICE HOTELS
                                          INTERNATIONAL, INC.)



_____         By: _____
Everett F. Casey                              Name: Rod Sibley
Assistant Secretary                           Title: Sr VP Franchise Operations

EXHIBIT B

7/99

Property Code NJ403
Comfort Inn

# TECHNOLOGY SERVICES AGREEMENT AND SOFTWARE LICENSE

### [Profit Manager - Sunburst - Purchase]

This Agreement ("Agreement") is made and entered into as of the date set forth below, by and between **CHOICE HOTELS INTERNATIONAL, INC.**, a Delaware corporation ("CHOICE") and Arjay/Widell Real Properties, a New Jersey general partnership ("You") with respect to Your hotel located at 7095 Black Horse Pike , West Atantic City, NJ 08232 ("Licensed Property").

### I.        SOFTWARE LICENSE

(A)        CHOICE hereby grants and You hereby accept a non-transferable, nonexclusive, limited license (or sublicense, as appropriate) to use the CHOICE Reservation System Software described in Schedule 1 hereto, including basic material and related documentation and manuals (the "Software"), for the term of this Agreement.

(B)        The license granted under this Agreement authorizes You to use the Software only on computer equipment specifically authorized by CHOICE for use in conjunction with the Software and located at the Licensed Property (the "Hardware"). If the Software is used on more than one computer system, an additional license will be required. If the Hardware becomes  inoperative due to malfunctioning or is replaced by new Hardware, the license granted under this Agreement will extend to any substitute or replacement Hardware.

(C)        This license and any of the programs or materials to which it applies may not be assigned, sub-licensed or transferred by You without CHOICE's prior written consent, which CHOICE in its sole discretion may grant or deny.  You do not have a right to print or copy, in whole or in part, the Software or any updates to the Software.

(D)        CHOICE will provide You with all updates and enhancements, if any, to any Software as they become available.

(E) .       CHOICE will provide You with programming services after delivery of the Software, without additional charge, to correct Software errors, issue corrected releases and provide enhancements.  However, CHOICE does not guarantee service results or that all errors will be capable of correction.  CHOICE reserves the right to make additional charges for any additional efforts required to provide services resulting from Your modifications of the Software, use of other than the latest available release of the Software or use of other unauthorized software in conjunction with the Software.

(F)        All programs furnished by CHOICE, drawings, diagrams, specifications, documentation and other material relating to the use and service of the Software is confidential and the proprietary property of CHOICE (or a licensor of CHOICE) and You shall acquire no rights in them except to use them for the purposes of this Agreement.  You may not sell, rent, disclose, loan or otherwise communicate or make available this information to any person and You agree to take all reasonable precautions to maintain its confidentiality.  All proprietary property will be returned to CHOICE upon the termination or expiration of this Agreement.

(G)        WE WARRANT THAT THE SOFTWARE WILL PERFROM THE FUNCTIONS AND OPERATIONS WE SPECIFY ON YOUR HARDWARE (BUT NO OTHER HARDWARE), PROVIDED YOU FOLLOW OUR WRITTEN INSTRUCTIONS, INSTALL UPDATES AND MODIFICATIONS AND MAKE CORRECTIONS AS DIRECTED, AND ARE NOT IN DEFAULT UNDER THIS AGREEMENT OR THE FRANCHISE AGREEMENT. OUR SOLE OBLIGATION UNDER THIS WARRANTY SHALL BE TO REMEDY ANY NONPERFORMANCE OF THE SOFTWARE WITHIN A REASONABLE TIME AFTER YOU REPORT IT TO US. WE DO NOT WARRANT IN ANY WAY THE PERFROMANCE OR FUNCTIONING OF THE SOFTWARE UNLESS IT IS UTILIZED AS PART OF THE HARDWARE. ALL WARRANTIES UNDER THIS SUBSECTION ARE CONTINGENT UPON PROPER USE OF THE EQUIPMENT AND SHALL NOT APPLY IF YOU FAIL TO COMPLY WITH OPERATING INSTRUCTIONS, MAKE OR PERMIT THE UNAUTHORIZED ALTERATION OR REPAIR OF THE HARDWARE

OR SOFTWARE, OR FAIL TO IMPLEMENT ALL UPDATES OR CORRECTIONS TO THE SOFTWARE WE MAKE AVAILABLE TO YOU. YOU FURTHER UNDERSTAND AND ACKNOWLEDGE THAT CHOICE MAKES NO WARRANTY OR REPRESENTATION OTHER THAN CONTAINED IN THIS AGREEMENT, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE SOFTWARE, INCLUDING ITS QUALITY, PERFORMANCE, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL CHOICE BE LIABLE FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE.

(H)    CHOICE WARRANTS THAT THOSE PORTIONS OF THE SOFTWARE WHICH WERE DEVELOPED DIRECTLY BY OR FOR CHOICE ("CHOICE'S PORTION OF THE SOFTWARE") WILL STORE, PROCESS, CALCULATE, COMPARE AND SEQUENCE DATE DATA PRIOR TO, DURING AND AFTER CALENDAR YEAR 2000, WITHOUT ERROR RELATING TO DATE AND TIME DATA, INCLUDING ANY ERRORS RELATING TO, OR THE PRODUCT OF, DATE AND TIME DATA THAT REPRESENTS DIFFERENT CENTURIES OR MORE THAN ONE CENTURY, INCLUDING LEAP YEAR AND LEAP DATE CALCULATIONS, WHEN USED IN ACCORDANCE WITH THE ASSOCIATED DOCUMENTATION AND SPECIFICATIONS AND PROVIDED THAT ANY AND ALL HARDWARE, FIRMWARE AND SOFTWARE USED IN COMBINATION WITH OR WHICH INTERFACE WITH CHOICE'S PORTION OF THE SOFTWARE PROPERLY EXCHANGE ACCURATE DATE DATA WITH CHOICE'S PORTION OF THE SOFTWARE.  CHOICE MAKES NO WARRANTIES, EXPRESS OR IMPLIED, THAT THE SOFTWARE, OTHER THAN CHOICE'S PORTION OF THE SOFTWARE, WILL BE YEAR 2000 COMPLIANT. THIS WARRANTY DOES NOT COVER ANY MALFUNCTIONS OR FAILURES OF CHOICE'S PORTION OF THE SOFTWARE ARISING FROM ANY ALTERATIONS, ADDITIONS, OR MODIFICATIONS MADE TO IT BY YOU WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF CHOICE. IN NO EVENT SHALL CHOICE BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY CLAIMS OF CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES, LOSSES OR COSTS.

**II.    COMMUNICATIONS**

CHOICE will make available for rental to You a satellite communications system (or such other alternative form of data transport as CHOICE may designate) from Hughes Network Systems, Inc. (or such other provider as CHOICE may designate) to provide access for computer-to-computer communication between the Hardware located at the Licensed Property and CHOICE. You agree not to disconnect or otherwise remove the Hardware from its on-line status with CHOICE for more than one (1) hour during any 24-hour period, unless You give CHOICE reasonable advance notice and, if requested by CHOICE, provide an alternative means of sending and receiving information. You acquire no ownership rights with respect to the satellite communications system.

**III.    CHOICE'S OBLIGATIONS**

CHOICE agrees to provide the following to You:

(A)    on-going support relating to maintenance, problem solving and use of the Software. CHOICE will provide to You telephone assistance on all problems or questions relating to the use and operation of the Software. This service will be available continuously 24 hours per day, 7 days a week and will be staffed by personnel trained in the use, operation and maintenance of the Software;

(B)    any and all enhancements and modifications to the Software;

(C)    configuration and on-site installation services for the Software;

(D)    a one-time, on-site training session relating to the use of the Software;

(E)    installation, support and on-going maintenance relating to any satellite communications system required or recommended by CHOICE, as provided through Hughes Network Systems, Inc. (or such other provider as CHOICE may designate);

(F)    one (1) copy of the Software (which must be returned to CHOICE upon the expiration or termination of this Agreement);

(G)  support and on-going, on-site maintenance relating to the Hardware which will be in addition to and extend the manufacturer's warranty (and which will be provided to You by a third-party provider); and

(H)  the Hardware You have ordered for purchase.

## IV.  YOUR OBLIGATIONS

Throughout the Term of this Agreement, You agree to:

(A)  follow all CHOICE installation, operation and maintenance instructions;

(B)  provide the CHOICE specified environment and electrical and telecommunications connections;

(C)  provide access to the Hardware, Software and satellite system to enable CHOICE or third-party providers to perform whatever services or activities which are required or permitted under this Agreement;

(D)  provide adequate communication facilities, work space and storage space for CHOICE or third-party provider visits;

(E)  have a representative available during any on-site CHOICE or third-party provider maintenance activity;

(F)  maintain a procedure external to the Software program(s) and host computer for reconstruction of lost or altered files, data or programs;

(G)  notify CHOICE, and not a third party service agent, of any condition which might require maintenance service hereunder;

(H)  operate the Software only in conjunction with the authorized Hardware.

## V.  PAYMENTS

(A)  In exchange for the items to be provided to You under Sections III (C), (D), (F) and (H) of this Agreement (and including taxes and shipping charges for the Hardware and Software and our travel costs associated with training), You must pay CHOICE, prior to delivery of the Hardware, an Up-front Fee in the amount of $19,694.24.

(B)  Commencing on the first day of the month following installation of the Software, the monthly fee ("Monthly Fee") payable to CHOICE by You in exchange for the Software license and the items to be rendered to You under Sections III (A), (B), (E) and (G) of this Agreement is $580.00.

(C)  You will be billed the Monthly Fee on the monthly invoice You receive from CHOICE for franchise and related fees on or around the 15th of each month, and payment will be due on the first day of the following month.

(D)  Upon written notice to You, CHOICE will be entitled to change the Monthly Fee to reflect any and all increases or decreases in the cost of providing the services to be rendered to You by CHOICE (or any third-party acting on CHOICE's behalf), so long as any such increases are applied to substantially all franchisees using the Software and Hardware.

(E)  The following are not covered by the Monthly Fee and will be billed separately by CHOICE in addition to the Monthly Fee: (i) services, consultations or activities requested by You and not included in Sections III (A) - (D) of this Agreement, (ii) additional training beyond the training session addressed in Section III (D), (iii) costs or charges incurred by CHOICE (or a third-party provider) which result from a request by You to expedite services, and (iv) costs or charges incurred by CHOICE (or a third-party provider) which result from Your misuse of the Software or breach of any obligation contained in this Agreement.

(F)   You will pay a service charge of 1.5% per month or the maximum amount allowable by applicable laws, whichever is less, on all delinquent Monthly Fees.

## VI.   TERMINATION

The term of this Agreement will begin when it is fully signed and will continue until it terminates upon the occurrence of any of the following events:

(A)   on 30 days' prior written notice from CHOICE, so long as CHOICE or CHOICE's successor offers You a replacement agreement in connection with reservation technology services;

(B)   on termination or expiration of Your Franchise Agreement with CHOICE;

(C)   on Your failure to keep, observe or perform any term, obligation, condition or covenant contained in this Agreement, in the Franchise Agreement or in the Rules and Regulations (however, CHOICE may, at its option, reinstate this Agreement if You subsequently cure Your defaults); and

(D)   on Your failure to keep, observe or perform any term, obligation, condition or covenant contained in any agreement, lease or sub-lease entered into by You in connection with the Hardware or Software.

## VII.   HARDWARE

You must update or replace the Hardware, as required by CHOICE, in order to accommodate changes and updates to the Software.

## VIII.   GENERAL

(A)   This Agreement can be modified only by a written agreement signed by persons authorized to sign such agreements on behalf of CHOICE and You.

(B)   CHOICE will not be held responsible for any delay or failure to provide any service or perform any act required hereunder, in whole or in part, due to the following factors as they affect CHOICE or its agents or representatives: federal, state or municipal action or regulation; strikes or other labor troubles; fire; damage, accident or other casualty; failure or delay in transportation, shortages of raw materials, labor, fuel or supplies and sabotage, insurrection, riot or other acts of civil disobedience or of a public enemy.

(C)   In the event either party finds it necessary to employ legal counsel or to bring an action at law or other proceedings against the other party to enforce any of the provisions of this Agreement, the party prevailing in such action or proceeding shall be paid all reasonable attorney's fees and expenses by the other party.

(D)   The headings of the various sections of the Agreement have been inserted for convenience only and will have no substantive effect. If any provision of this Agreement is deemed to be invalid or unenforceable, the remainder of this Agreement will not be affected by it.

(E)   You agree to indemnify and hold CHOICE and its affiliated companies (including their respective officers, directors, employees, agents and representatives) harmless from and against any and all loss, liability and expense (including court costs and reasonable attorney's fees) relating to third party claims, demands, or actions arising out of or in any way related to Your negligence or willful misconduct in:  the possession, use and operation of the Software; unauthorized modifications to the Software; use of other than the latest version of the Software; or the unauthorized use of other software in conjunction with the Software.

(F)   CHOICE will not be liable for consequential or incidental damages or lost profits even if CHOICE has been advised of the possibility of such damages, and in no event will CHOICE's liability for damages, regardless of the form of action, exceed the charges actually paid by You under this Agreement.

(G)   You may not assign this Agreement without the prior written consent of CHOICE.

(H)   Notices under this Agreement will be sent to the same address indicated in the Franchise Agreement.

(I)    The failure of either party to insist on strict performance of any of the provisions of this Agreement or to exercise any right it grants will not be construed as a relinquishment or future waiver; rather, the provision or right will continue in full force. No waiver of any provision or right will be valid unless it is in writing and signed by the party giving it.

(J)    You will be responsible for the payment of all taxes in connection with this Agreement, except for any tax based on CHOICE'S net income.

(K)    This Agreement will be governed by the laws of the State of Maryland.

(L)    The terms of any applicable Schedules and of any agreements or other materials referred to in this Agreement are incorporated in and made part of this Agreement.

(M)    YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, UNDERSTAND IT AND AGREE TO BE BOUND BY ITS TERMS AND FURTHER AGREE THAT IT IS THE COMPLETE AND EXCLUSIVE AGREEMENT BETWEEN THE PARTIES, WHICH SUPERSEDES ALL OTHER PROPOSALS ORAL OR WRITTEN AND ALL OTHER COMMUNICATIONS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT.

(N)    This Agreement shall supersede any and all previous agreements executed between CHOICE and You with respect to reservations technology.

IN WITNESS WHEREOF, the parties hereunto set their hands and seals as of the _____ day of

April _____ 19 2000.

CHOICE HOTELS INTERNATIONAL, INC.

ATTEST:

_____ By: _____ (Seal)

Kevin M. Rooney, Assistant Secretary          Michael J. DeSantis, Senior Vice-President

NJ403                                          **Arjay/Widell Real Properties, a New Jersey general partnership**

                                               **Arjay/Widell Real Properties, a New Jersey general partnership**

Witness:

                                               By: _____ L.S.
_____                        Name: Ralph C. Del Priore
Name:                                          Title: General Partner
Title:
                                               Date: 3/09/00

Witness:

                                               By: _____ L.S.
_____                        Name: John Wiley
Name:                                          Title: General Partner
Title:
                                               Date: 3/09/00

_r7/20/99

SCHEDULE 1

Description of Software licensed or sublicensed to You (which may be amended, updated or replaced from time to time, as required by CHOICE):

(1)     Profit Manager by Choice Hotels

(2)     RevPAR Maximizer/Forecast

(3)     ChoiceLink for Windows, including Talaria

(4)     ChoiceLink Interface

(5)     Protocol Technologies Interface (sublicense)

(6)     Interface Manager (sublicense)
                Interfaces:  Call Accounting, Credit Card, PBX

(7)     Microsoft SQL Server and Client (sublicense)

(8)     GBMail (sublicense)

(9)     McAfee VirusScan (sublicense)

(10)    pcAnywhere (sublicense)

(11)    Starburst (sublicense)

(12)    Protobase/PBAdmin (sublicense)

r 7/20/99

NJ403

EXHIBIT C

## ASSIGNMENT AND ASSUMPTION OF FRANCHISE AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION OF FRANCHISE AGREEMENT ("Assignment"), dated August 25, 2003, by and among HFC COMMERCIAL REALTY, INC., a Delaware corporation (the "Assignor"), TROCKI HOTELS L.P., a New Jersey limited partnership, DR. IRA TROCKI, an individual (collectively, the Assignee), and CHOICE HOTELS INTERNATIONAL, INC. (the "Franchisor")

### WITNESSETH:

WHEREAS, Assignor and Trocki Hotels L.P. entered into that certain Real Estate Sale Agreement dated July 3, 2003, as amended by that certain Amendment to Real Estate Sale Agreement dated July 24, 2003, demising certain premises located in Egg Harbor, Atlantic County, New Jersey and legally described on Exhibit "A", which is attached hereto and incorporated herein by this reference (the "Property").

WHEREAS, the predecessor in interest of Assignor (the "Original Franchisee") and the predecessor in interest of Franchisor previously entered into a Franchise Agreement (as may be amended, the "Franchise Agreement") dated May 6, 1987, which granted to the Original Franchisee the non-exclusive right and franchise to operate a Comfort Inn on the Property.

WHEREAS, the Original Franchisee filed a petition in the United States Bankruptcy Court (the "Court"). During the bankruptcy proceedings for the Original Franchisee, Assignor assumed all of the Original Franchisee's rights under the Franchise Agreement pursuant to an order by the Court.

WHEREAS, Assignor desires to assign all of its right, title and interest in the Franchise Agreement to Assignee and Assignee desires to accept such assignment and assume all of the obligations of the Assignor under the Franchise Agreement.

WHEREAS, the Franchisor has consented to such assignment and assumption of the Franchise Agreement.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.    *Assignment.* Effective as of the date hereof, Assignor hereby assigns, transfers, and conveys to Assignee all of Assignor's right, title and interest as franchisee in and to the Franchise Agreement.

2.   *Assumption.*  Effective as of the date hereof, Assignee hereby assumes all liabilities and obligations of Assignor under the Franchise Agreement and agrees to perform all obligations of Assignor under the Franchise Agreement.

3.   *Consent and Release.*

(a)   Franchisor hereby consents to the assignment and assumption of the Franchise Agreement as set forth herein.

(b)   Franchisor acknowledges that, as of the date hereof, Assignor is no longer obligated to perform any further obligations under the Franchise Agreement and all rights and privileges granted to Assignor in the Franchise Agreement are hereby revoked. As of the date hereof, Franchisor, on behalf of itself and its heirs, successors and assigns, hereby fully and forever releases and discharges the Assignor, any guarantor of the Franchise Agreement and their respective, subsidiaries, affiliates, divisions, successors and assigns, together with their respective officers, directors, agents and employees, from any and all claims, fees, demands, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, orders or liabilities of any kind or nature, in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, which Franchisor now owns or holds or has at any time heretofore owned or held as against the Assignor or any guarantor of the Franchise Agreement, arising out of or in any way connected with the Franchise Agreement, or the assignment of the same, or any other transactions, occurrences, acts of omissions or any loss, damage or injury whatsoever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of the Assignor hereto committed or omitted prior to the date of this Agreement, including, but not limited to any and all claims for attorneys' fees and costs under any statute, regulation, or judicial precedent that shifts responsibility to either of the parties hereto for payment of attorney's fees and costs in litigation arising out of the Franchise Agreement or any guaranty thereof.

(c)   As of the date hereof, Franchisee, on behalf of itself and its heirs, successors and assigns, hereby fully and forever releases and discharges the Franchisor, and its respective, subsidiaries, affiliates, divisions, successors and assigns, together with its respective officers, directors, agents and employees, from any and all claims, fees, demands, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, orders or liabilities of any kind or nature, in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, which Franchisee now owns or holds or has at any time heretofore owned or held as against the Franchisor, arising out of or in any way connected with the Franchise Agreement, or the assignment of the same, or any other transactions, occurrences, acts of omissions or any loss, damage or injury whatsoever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of the Franchisor hereto committed or omitted prior to the date of this Agreement, including, but not limited to any and all claims for attorneys' fees and costs under any statute, regulation, or judicial precedent that shifts responsibility to either of

the parties hereto for payment of attorney's fees and costs in litigation arising out of the Franchise Agreement.

4.    *Termination of Franchise Agreement.*  Assignee and Franchisor agree that the ~~Franchise Agreement is hereby amended so that the Franchise Agreement will terminate on the~~ earlier of ~~September~~ 30, 2003 or such date that Assignee and Franchisor enter into a new Comfort Inn franchise agreement for the Property.

*October*

5.    *Payment of Fees.*  Notwithstanding Section 3(a) of this Assignment, Assignor agrees to pay Franchisor any fees that it owes Franchisor for the period of time ending on the date prior to the day Assignor conveys title to the Property to Assignee.

6.    *Assumption Fee.*  Assignee shall pay Franchisor an assignment of $2,500, which will be wired to Franchisor's account following closing on the sale of the Property.

7.    *Binding Effect.*  This Assignment shall be binding upon and inure to the benefit of Assignor, Assignee and their respective successors and assigns.

8.    *Counterparts.*  This Assignment may be executed in two or more counterparts.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

01-505868.1

IN WITNESS WHEREOF, this Assignment and Assumption of Franchise Agreement has been executed on the date and year first above written.

ASSIGNOR:

HFC COMMERCIAL REALTY, INC., a Delaware corporation

By: _____
     Timothy P. Shanley, Vice President

ASSIGNEE:

TROCKI HOTELS, L.P., a New Jersey limited partnership

By: _____
Name: _____
Title: _____

DR. IRA TROCKI

_____

FRANCHISOR:

CHOICE HOTELS INTERNATIONAL, INC.

By: _____
Name: _____
Title: _____

01-505868.1

IN WITNESS WHEREOF, this Assignment and Assumption of Franchise Agreement has been executed on the date and year first above written.

ASSIGNOR:

HFC COMMERCIAL REALTY, INC., a Delaware corporation

By: _____
Timothy P. Shanley, Vice President

ASSIGNEE:

TROCKI HOTELS, L.P., a New Jersey limited partnership

By: _____
Name: _____
Title: _____

DR. IRA TROCKI

_____

FRANCHISOR:

CHOICE HOTELS INTERNATIONAL, INC.

By: _____
Name: Michael J. DeSantis
Title: Senior Vice President
August 25, 2003

01-505868.1

EXHIBIT "A"

LEGAL DESCRIPTION

ALL that certain lot, tract or parcel of land and premises situate in the Township of Egg Harbor, County of Atlantic and State of New Jersey, and being more particularly described as follows:

BEGINNING at a point where the Southeasterly line of Dover Place (50 feet wide) is intersected by the Southerly line of Verona Boulevard (80 feet wide) also known as Black Horse Pike, U.S. Route 40 and 322; and extending thence

(1)     Along the Southerly line of Verona Boulevard, South 53 degrees East, a distance of 365 feet to a point; thence

(2)     South 37 degrees West, a distance of 261.06 feet to a point; thence

(3)     North 9 degrees 30 minutes West, a distance of 85.63 feet to a point; thence

(4)     South 82 degrees West, a distance of 195 feet to a point; thence

(5)     South 37 degrees West, a distance of 320 feet to a point ; thence

(6)     North 53 degrees West, a distance of 165 feet to a point in the Easterly line of Dover Place; thence

(7)     Along the Easterly line of Dover Place, North 37 degrees East, a distance of 660 feet to a point and place of BEGINNING.

BEING KNOWN AS Lot 1, Block 4305 (F/K/A Lot 3, Block 42H), on the Official Tax Map of Egg Harbor Township.

EXHIBIT "A"

## LEGAL DESCRIPTION

ALL that certain lot, tract or parcel of land and premises situate in the Township of Egg Harbor, County of Atlantic and State of New Jersey, and being more particularly described as follows:

BEGINNING at a point where the Southeasterly line of Dover Place (50 feet wide) is intersected by the Southerly line of Verona Boulevard (80 feet wide) also known as Black Horse Pike, U.S. Route 40 and 322; and extending thence

(1)     Along the Southerly line of Verona Boulevard, South 53 degrees East, a distance of 365 feet to a point; thence

(2)     South 37 degrees West, a distance of 261.06 feet to a point; thence

(3)     North 9 degrees 30 minutes West, a distance of 85.63 feet to a point; thence

(4)     South 82 degrees West, a distance of 195 feet to a point; thence

(5)     South 37 degrees West, a distance of 320 feet to a point ; thence

(6)     North 53 degrees West, a distance of 165 feet to a point in the Easterly line of Dover Place; thence

(7)     Along the Easterly line of Dover Place, North 37 degrees East, a distance of 660 feet to a point and place of BEGINNING.

BEING KNOWN AS Lot 1, Block 4305 (F/K/A Lot 3, Block 42H), on the Official Tax Map of Egg Harbor Township.

# CHOICE HOTELS
## INTERNATIONAL

*Rob Hottle*
*Regional Vice President*
*Franchise Services*

August 27, 2004

Ira Trocki
Trocki Hotels, Lp
631 Tilton Road
Northfield, NJ  8225

Re:     NJ403 - Comfort Inn West Bayside Resort – West Atlantic City

Dear Franchisee:

Your Choice Hotels Franchise Service Director recently conducted a quality assurance review at your hotel.  A copy of the Quality Assurance Review (QAR) was discussed and left with the property manager or hotel representative.

Congratulations, all areas evaluated are currently passing brand standards.

You may notice that this form has been revised, reflecting recent changes in the quality assurance process.  The QAR process now has a greater focus on those items that matter most to guests.  You will note that the section formerly shown as "Administrative" has been eliminated, and essential components of that section have been incorporated into the Maintenance and Capital Improvement section of the form.  Starting in the second quarter of 2005, the QAR process will incorporate data from the new Guest Satisfaction Survey that is now being tested.

Proactive RevPAR building and quality assurance assistance are hallmarks of Choice's franchise service efforts.  Our research clearly shows that high product and service quality, and consistency, are important to today's leisure and business travelers.  We are confident that the new form, and enhancements to the quality assurance process, will bring greater product and service consistency, leading to increased revenues and market share.

If you have any questions regarding the review, please contact your Franchise Service Director.

We appreciate your support of Choice Hotels and look forward to sharing your success in 2004!

Sincerely,

Rob Hottle, CHA
Regional Vice President, Franchise Services

Enclosure:  Quality Assurance Review                    AUG 30 2004

cc:      Master File

# CHOICE HOTELS
## INTERNATIONAL



May 15, 2006

Certified  Mail Number 71364200360700091227

Trocki Hotels, LP, Trocki Holding, Inc.,
    its General Partner, Ira Trocki and Shari Trocki
Attn:  Mr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 082225

      RE:    COMFORT INN West (NJ403A)
             West Atlantic City, New Jersey

### NOTICE OF TERMINATION

Dear Mr. Trocki:

    Choice Hotels International, Inc. ("Choice") notifies Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki and Shari Trocki ("Franchisees") of Choice's election to terminate, on the 10th anniversary of the Commencement Date, the COMFORT INN franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership dated May 6, 1987 which was assumed by Franchisee under an Assumption Agreement dated November 21, 2003 ("Franchise Agreement") on May 21, 2007, pursuant to paragraph 3 of the Franchise Agreement.

    Choice hereby notifies Franchisee that the Franchise Agreement and all related agreements (the "Agreements"), pertaining to the above-referenced location, are terminated effective May 21, 2007.

    Franchisees' use of Choice's proprietary marks, including, but not limited to, the trade name and service mark COMFORT INN®, must cease no later than May 21, 2007. After that date, Franchisees' continued use of Choice's proprietary marks in connection with the above-referenced hotel will constitute trademark infringement for which Franchisees will be liable to Choice for additional damages under the Agreements and the Lanham Trademark Act of 1946 and for which Choice may seek injunctive relief. We hope that it will not be necessary to do so, but are prepared to act accordingly if Franchisees fail to timely comply with the post-termination obligations of the Franchise Agreement.

    In addition, pursuant to paragraph 2 of the Franchise Agreement, all franchise and related fees must be kept current up to the date of termination. Choice could terminate the franchise, after proper written notice, prior to May 21, 2007, should a default in any of the terms of the Agreements occur.

Mr. Ira Trocki
May 15, 2006
Page 2

If you have any questions, please contact Dean Baij at (301) 592-6128.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Kevin M. Rooney
Associate General Counsel

cc:   Certified Mail Number 71364200360700091234
      General Manager
      COMFORT INN West
      7095 Black Horse Pike
      West Atlantic City, New Jersey 08232

      Rob Hottle, Regional Vice President of Franchise Services
      Dean Baij, Brand Manager
      Sam Walters, Senior Director, Credit and Receivables
      Michael Ludden, Franchise Service Director

P:\Legal\FILES\Defaults\nj403.doc

# CHOICE HOTELS
## I N T E R N A T I O N A L

Via Fed Ex

May 24, 2006

Mr. Ira Trocki
TROCKI HOTELS, LP
631 Tilton Road
Northfield, NJ 08225

Dear Mr. Ira Trocki:

It is our current business practice to notify each existing licensee in accordance with the company's Impact Policies and procedures whenever an application is received from an inn seeking to join the Choice Hotels International system.

Submission of an application does not constitute acceptance. The applicant is:

**Applicant:**              **COMFORT INN-NJ230**
                            **Conversion/Hampton Inn**
                            **7079 Black Horse Pike**
                            **West Atlantic City, NJ 08232**
                            **144 Rooms**

Under Choice's Impact Policy, we have the right to replace hotels that are exiting the Choice system. **This application is a replacement of NJ403/Comfort Inn located at 7095 Black Horse Pike (US40) West Atlantic City, NJ08232 that will be leaving the Choice System.** We urge you to consult with the ownership of the property for which you serve as Designated Representative and determine whether you wish to file an objection under our Incremental Impact Policy. For your convenience, the Incremental Impact Policy and Formal Objection Forms are located on ChoiceCentral, under >Departments> Fair Franchising. If you have any further questions or concerns regarding this notice, or are unsure of the objection process as stated in Choice's Incremental Impact Policy, please contact **Derek Lawhorn, Ombudsperson,** at (301) 592-6165, fax your objections or comments to (301) 592-6360 or email your completed formal objection forms to Ombudsperson@choicehotels.com

Sincerely,

Evelyn Wills
Specialist, Admin Application

cc:    General Manager - NJ403- COMFORT INN West Bayside Resort
       Derek Lawhorn



# CHOICE HOTELS
## I N T E R N A T I O N A L

May 17, 2006

Certified Mail Number 71364200360700091555

Trocki Hotels, LP, Trocki Holding, Inc.,
   its General Partner, Ira Trocki and Shari Trocki
Attn:   Mr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 082225

RE:   COMFORT INN West (NJ403A)
        West Atlantic City, New Jersey

## NOTICE OF DEFAULT

Dear Mr. Trocki:

The management of Choice Hotels International, Inc. ("Choice") has instructed me to notify Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki and Shari Trocki ("Franchisees") of certain defaults in the performance of Franchisees' material obligations required under the franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership dated May 6, 1987 which was assumed by Franchisee under an Assumption Agreement dated November 21, 2003 ("Franchise Agreement"). Specifically, Franchisees are in default of the following provisions of the Franchise Agreement:

1.      Failure to pay when due monthly continuing franchise fees, monthly marketing fees and monthly reservations services fees required by paragraphs 2(b), (c) and (d) of the Franchise Agreement.

2.      Failure to pay other charges when due, including service charges and membership dues of the Choice Hotels Operators Council as required by the Rules and Regulations and the Franchise Agreement.

In addition, Franchisees are in default of the Technology Services Program Statement due to the nonpayment of fees due thereunder.

According to Choice's records, the sum of $~~$29,479.24~~ $18,791.95 *PDB* is now past due on the open account. Details of this delinquent account balance are stated in the enclosed copy of the Consolidated Statement dated May 15, 2006.

This will advise Franchisees that all past due fees must be paid within 10 days of the date of this letter; or pursuant to the Rules and Regulations and paragraphs 5 and 7 of the Franchise Agreement, Choice will discontinue reservations and marketing services until the defaults are cured (including cessation of reservations). This action may be undertaken in Choice's sole discretion and without reduction of fees accruing under the Franchise Agreement. **If Choice discontinues reservations services, Choice will charge Franchisees a $5,000.00 fee to reinstate reservations services if the default is cured before termination of the Franchise Agreement. In addition, while the default remains uncured, Franchisees have no rights under Choice's Impact Policy.**

*10750 Columbia Pike • Silver Spring, Maryland 20901-4447 • 301-592-5000*

Mr. Ira Trocki
May 17, 2006
Page 2

In addition, if all past due fees cited in this letter are not paid within 10 days of the date of this letter, at Choice's option, Choice may terminate the Franchise Agreement and related agreements for the above-referenced hotel (collectively referred to as the "Agreements").

If the Agreements are terminated due to Franchisees' failure to cure the above defaults, Choice may begin legal action against Franchisees for outstanding amounts accrued through the effective date of termination and for liquidated damages for Franchisees' failure to perform Franchisees' obligations for the full term of the Agreements.

If you have any questions, please contact Frank Batelka, Corporate Asset Project Manager at (301) 592-6104.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Gery Brown

Gery Brown
Director of Credit
Phone (301) 592-5162
Fax (301) 592-6275

cc:     Certified Mail Number 71364200360700091562
        General Manager
        COMFORT INN West
        7095 Black Horse Pike
        West Atlantic City, New Jersey 08232

P:\Legal\FILES\Defaults\NJ403CI-Fee.doc



# CHOICE HOTELS
## I N T E R N A T I O N A L

May 24, 2006

Certified Mail Number 71364200360700092521

Trocki Hotels, LP, Trocki Holding, Inc.,
    its General Partner, Ira Trocki and Shari Trocki
Attn:   Mr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 082225

RE:    COMFORT INN West (NJ403A)
       West Atlantic City, New Jersey

## NOTICE OF DEFAULT

Dear Mr. Trocki:

   The management of Choice Hotels International, Inc. ("Choice") has instructed me to notify Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki, Shari Trocki ("Franchisees") of certain defaults in the performance of Franchisees' material obligations required under the franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership dated May 6, 1987 which was assumed by Franchisee under an Assumption Agreement dated November 21, 2003 ("Franchise Agreement"). Specifically, Franchisees are in default of the following provisions of the Franchise Agreement:

   • Failure to respond to guest complaints as required by section 5 of the Franchise Agreement and by section 816.1 of the COMFORT INN Rules and Regulations.

   This will advise Franchisees that this default must be completely cured within 30 days of the date of this letter, or pursuant to the Rules and Regulations and paragraphs 5 and 7 of the Franchise Agreement, Choice will discontinue reservations and marketing services until the defaults are cured (including cessation of reservations). This action may be undertaken in Choice's sole discretion and without reduction of fees accruing under the Franchise Agreement. If Choice discontinues reservations services, Choice will charge Franchisees a $5,000.00 fee to reinstate reservations services if the default is cured before termination of the Franchise Agreement. In addition, while the default remains uncured, Franchisees have no rights under Choice's Impact Policy.

   In addition, if the defaults cited in this letter are not completely cured within 30 days of the date of this letter, at Choice's option, Choice may terminate the Franchise Agreement and related agreements for the above-referenced hotel (collectively referred to as the "Agreements"). If you fail to contact Choice within 30 days to inform us that all defaults have been rectified, I will assume that the items have not been cured.

Mr. Ira Trocki
May 24, 2006
Page 2

If the Agreements are terminated due to Franchisees' failure to cure the above defaults, Choice may begin legal action against Franchisees for outstanding amounts accrued through the effective date of termination and for lost profits damages for Franchisees' failure to perform Franchisees' obligations for the full term of the Agreements.

If you have any questions, please contact Dean Tarasenko at (701) 858-5715.  You must fax all cure materials directly to Dean Tarasenko at (701) 858-5719.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Kevin M. Rooney
Associate General Counsel

cc:    Certified Mail Number 71364200360700092538
       General Manager
       COMFORT INN West
       7095 Black Horse Pike
       West Atlantic City, New Jersey 08232

       Dean Tarasenko, Manager of Customer Relations

P:\Legal\FILES\Defaults\NJ403CI-GC.doc



# CHOICE HOTELS
## INTERNATIONAL

June 19, 2006

Certified Mail Number 71364200360700095232

Trocki Hotels, LP, Trocki Holding, Inc.,
    its General Partner, Ira Trocki and Shari Trocki
Attn:   Dr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 08225

RE:     COMFORT INN West (NJ403A)
        West Atlantic City, New Jersey

**NOTICE OF DEFAULT**

Dear Dr. Trocki:

The management of Choice Hotels International, Inc. ("Choice") has instructed me to notify Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki, Shari Trocki ("Franchisees") of certain defaults in the performance of Franchisees' material obligations required under the franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership dated May 6, 1987, which was assumed by Franchisees under an Assumption Agreement, dated November 21, 2003 ("Franchise Agreement").  Specifically, Franchisees are in default of the following provisions of the Franchise Agreement:

- Failure to install new Comfort Inn signs at the Hotel, as required by Section 600.1 of the Comfort Rules and Regulations.

This will advise that, if the default cited in this letter is not completely cured within 30 days of the date of this letter, at Choice's option, Choice may terminate the Franchise Agreement and related agreements for the above-referenced hotel (collectively referred to as the "Agreements"). If you fail to contact Choice within 30 days to inform us that all defaults have been rectified, I will assume that the items have not been cured.

If the Agreement is terminated due to Franchisees' failure to cure the above defaults, Choice may begin legal action against Franchisees for outstanding amounts accrued through the effective date of termination and for lost profits damages for Franchisees' failure to perform Franchisees' obligations for the full term of the Agreements.



RECEIVED
JUN 2 6 2006

BY: --------------------

*10750 Columbia Pike • Silver Spring, Maryland 20901-4447 • 301-592-5000*

Dr. Ira Trocki
June 19, 2006
Page 2

If you have any questions, please contact Dean Baij at (301) 592-6128.  You must fax all cure materials directly to Dean Baij at (301) 592-5021.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Kevin M. Rooney
Associate General Counsel

cc:     Certified Mail Number 71364200360700095249
        General Manager
        COMFORT INN West
        7095 Black Horse Pike
        West Atlantic City, New Jersey 08232

P:\Legal\FILES\Defaults\NJ403CI-.doc



June 19, 2006



<u>Certified Mail Number 71364200380700095218</u>

Trocki Hotels, LP, Trocki Holding, Inc.,
   its General Partner, Ira Trocki and Shari Trocki
Attn:  Dr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 08225

RE:     COMFORT INN West (NJ403A)
        West Atlantic City, New Jersey

<u>NOTICE OF DEFAULT</u>

Dear Dr. Trocki:

The management of Choice Hotels International, Inc. ("Choice") has instructed me to notify Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki, Shari Trocki ("Franchisees") of certain defaults in the performance of Franchisees' material obligations required under the franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership dated May 6, 1987, which was assumed by Franchisees under an Assumption Agreement, dated November 21, 2003 ("Franchise Agreement"). Specifically, Franchisees are in default of the following provisions of the Franchise Agreement:

   •    Failure to install High Speed Internet Access in all guest rooms, as required by Section 440.05 of the Comfort Rules and Regulations.

This will advise that, if the default cited in this letter is not completely cured within 30 days of the date of this letter, at Choice's option, Choice may terminate the Franchise Agreement and related agreements for the above-referenced hotel (collectively referred to as the "Agreements"). If you fail to contact Choice within 30 days to inform us that all defaults have been rectified, I will assume that the items have not been cured.

If the Agreement is terminated due to Franchisees' failure to cure the above defaults, Choice may begin legal action against Franchisees for outstanding amounts accrued through the effective date of termination and for lost profits damages for Franchisees' failure to perform Franchisees' obligations for the full term of the Agreements.

10750 Columbia Pike, S.O.

Dr. Ira Trocki
June 19, 2006
Page 2

If you have any questions, please contact Dean Baij at (301) 592-6128.  You must fax all cure materials directly to Dean Baij at (301) 592-5021.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Kevin M. Rooney
Associate General Counsel

cc:   Certified Mail Number 71364200360700095249
      General Manager
      COMFORT INN West
      7095 Black Horse Pike
      West Atlantic City, New Jersey 08232

P:\Legal\FILES\Defaults\NJ403CI.doc

# CHOICE HOTELS
## I N T E R N A T I O N A L

June 21, 2006

RECEIVED
JUN 2 6 2006
BY: _____

Certified Mail Number 71364200360700095195

Trocki Hotels, LP, Trocki Holding, Inc.,
   its General Partner, Ira Trocki and Shari Trocki
Attn:   Dr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 08225

      RE:    COMFORT INN West (NJ403A)
             West Atlantic City, New Jersey

### NOTICE OF DEFAULT

Dear Dr. Trocki:

      The management of Choice Hotels International, Inc. ("Choice") has instructed me to notify Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki, Shari Trocki ("Franchisees") of certain defaults in the performance of Franchisees' material obligations required under the franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership dated May 6, 1987, which was assumed by Franchisees under an Assumption Agreement, dated November 21, 2003 ("Franchise Agreement").   Specifically, Franchisees are in default of the following provisions of the Franchise Agreement:

- Failure to establish and maintain a breakfast program at the Hotel in accordance with the Comfort Sunshine Breakfast Program, as required by Section 200 of the Comfort Rules and Regulations.

      This will advise that, if the default cited in this letter is not completely cured within 30 days of the date of this letter, at Choice's option, Choice may terminate the Franchise Agreement and related agreements for the above-referenced hotel (collectively referred to as the "Agreements"). If you fail to contact Choice within 30 days to inform us that all defaults have been rectified, I will assume that the items have not been cured.

      If the Agreement is terminated due to Franchisees' failure to cure the above defaults, Choice may begin legal action against Franchisees for outstanding amounts accrued through the effective date of termination and for lost profits damages for Franchisees' failure to perform Franchisees' obligations for the full term of the Agreements.

Dr. Ira Trocki
June 21, 2006
Page 2

If you have any questions, please contact Dean Baij at (301) 592-6128.  You must fax all cure materials directly to Dean Baij at (301) 592-5021.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Kevin M. Rooney
Associate General Counsel

cc:     Certified Mail Number 71364200360700095225
        General Manager
        COMFORT INN West
        7095 Black Horse Pike
        West Atlantic City, New Jersey 08232

P:\Legal\FILES\Defaults\NJ403CI-Internet.doc



# CHOICE HOTELS
## INTERNATIONAL

June 30, 2006

<u>VIA FEDERAL EXPRESS</u> and
<u>Certified Mail Number 71364200360700095751</u>

Trocki Hotels, LP, Trocki Holding, Inc.,
    its General Partner, Ira Trocki and Shari Trocki
Attn:   Mr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 08225

RE:   COMFORT INN West (NJ403A)
West Atlantic City, New Jersey

### NOTICE OF DEFAULT

Dear Mr. Trocki:

The management of Choice Hotels International, Inc. ("Choice") has instructed me to notify Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki and Shari Trocki ("Franchisees") of certain defaults in the performance of Franchisees' material obligations required under the franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership, dated May 6, 1987, which was assumed by Franchisees under an Assumption Agreement, dated November 21, 2003 ("Franchise Agreement"). Specifically, Franchisees are in default of Sections 5(a) and 5(b) of the Franchise Agreement, as evidenced by their failure to pass the most recent Quality Assurance Review, conducted on June 27, 2006, which demonstrates that the Hotel does not meet the minimum standards required by the COMFORT INN Rules and Regulations.   Enclosed for your convenience is a copy of the most recent Quality Assurance Review.

This will advise Franchisees that the material default addressed above must be cured within 30 days of the date of this letter, or pursuant to the Rules and Regulations and paragraphs 5 and 7 of the Franchise Agreement, Choice will discontinue reservations and marketing services until the defaults are cured (including cessation of reservations). This action may be undertaken in Choice's sole discretion and without reduction of fees accruing under the Franchise Agreement. **If Choice discontinues reservations services, Choice will charge Franchisees a $5,000.00 fee to reinstate reservations services if the default is cured before termination of the Franchise Agreement. In addition, while the default remains uncured, Franchisees have no rights under Choice's Impact Policy.**

In addition, if the material default cited in this Notice is not cured within 30 days of the date of this letter, at Choice's option, Choice may terminate the Franchise Agreement and related agreements for the above-referenced hotel (collectively referred to as the "Agreements").

Mr. Ira Trocki
June 30, 2006
Page 2

Choice will contact Franchisees in order to schedule a follow-up Quality Assurance Review shortly. This follow-up Quality Assurance Review will be conducted soon after Franchisees' 30-day cure period has expired. In order to cure the material default addressed in this Notice, the Hotel will have to receive passing grades on all sections of the follow-up Quality Assurance Review. Finally, please note that in the event Franchisees refuse to permit the follow-up Quality Assurance Review, Choice will assume that the material default addressed in this Notice has not been cured.

If the Agreements are terminated due to Franchisees' failure to cure the above defaults, Choice may begin legal action against Franchisees for outstanding amounts accrued through the effective date of termination and for lost profits damages for Franchisees' failure to perform Franchisees' obligations for the full term of the Agreements.

**If you have any questions, please contact your Franchise Service Director or his or her supervisor, Rob Hottle, Regional Vice President, Franchise Services at (704) 238-8732.**

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Kevin M. Rooney
Associate General Counsel

cc:   Certified Mail Number 71364200360700095768
General Manager
COMFORT INN West
7095 Black Horse Pike
West Atlantic City, New Jersey 08232

P:\Legal\FILES\Defaults\NJ403CI-QAR.doc

 

August 4, 2006

<u>Certified Mail Number 71364200360700099308</u>

Trocki Hotels, LP, Trocki Holding, Inc., its General Partner,
   Ira Trocki and Shari Trocki
Attn:  Dr. Ira Trocki
631 Tilton Road
Northfield, New Jersey 08225

      RE:   COMFORT INN West (NJ403A)
           West Atlantic City, New Jersey

<u>NOTICE OF TERMINATION</u>

Dear Dr. Trocki:

     By Notices of Default dated June 21, 2006 (regarding franchisees' failure to obtain proper signage) and June 30, 2006 (regarding the above-referenced hotel's Quality Assurance Review failure), respectively, Choice Hotels International, Inc. ("Choice") notified Trocki Hotels, LP, Trocki Holding, Inc., its General Partner, Ira Trocki and Shari Trocki ("Franchisees") that in connection with the franchise agreement and addendum between Choice and Arjay/Widell Real Properties, a New Jersey General Partnership, dated May 6, 1987, which was assumed by Franchisees under an Assumption Agreement, dated November 21, 2003, ("Franchise Agreement"), Franchisees were in default of Franchisees' material obligations under the Franchise Agreement. To date, these defaults have not been cured. In particular, Franchisees have failed to install the signage required by the Comfort Rules & Regulations and have failed to comply with the provisions of Sections 5(a) and 5(b) of the Franchise Agreement, as evidenced by the above-referenced hotel's failure to pass the Quality Assurance Review conducted on August 1, 2006.

     In view of the above-referenced material defaults and pursuant to Choice's letters dated June 21, 2006 and June 30, 2006 and Section 3(b)(3) of the Franchise Agreement, Choice hereby notifies Franchisees that the Franchise Agreement and all related agreements ("Agreements") pertaining to the above-referenced hotel  are terminated effective October 7, 2006.

     Franchisees' use of Choice's proprietary marks, including, but not limited to, the trade name and service mark COMFORT INN®, must cease no later than October 7, 2006. After that date, Franchisees' continued use of Choice's proprietary marks in connection with the above-referenced hotel will constitute trademark infringement for which Franchisees will be liable to Choice for additional damages under the Agreements and the Lanham Trademark Act of 1946 and for which Choice may seek injunctive relief. We hope that it will not be necessary to do so, but are prepared to act accordingly if you fail to timely comply with the post-termination obligations of the Franchise Agreement.

*10750 Columbia Pike • Silver Spring, Maryland 20901-4447 • 301-592-5000*

Dr. Ira Trocki
August 4, 2006
Page 2


According to Choice's records, Franchisees' estimated indebtedness for outstanding franchise and related fees accrued through August 4, 2006, totals $19,604.40 and Franchisees' indebtedness for outstanding travel agent commissions accrued through August 4, 2006 total $2,581.87. In addition, under paragraph 3(d) of the Franchise Agreement, Choice is entitled to lost profits damages totaling $32,573.72 for the remaining term of the Franchise Agreement through May 21, 2007, the 10th anniversary of the Opening Date.

Demand is hereby made on Franchisees for payment of the full amount of Choice's claim which, at present, totals $54,759.99. Should Choice's demand not be paid in full, Choice will proceed with appropriate legal action against Franchisees without further demands or notice for the full amount of the claim.

Sincerely,

CHOICE HOTELS INTERNATIONAL, INC.

Kevin M. Rooney
Associate General Counsel

cc:     Certified Mail Number 71364200360700099292
        General Manager
        COMFORT INN West
        7095 Black Horse Pike
        West Atlantic City, New Jersey 08232


P:\Legal\FILES\Defaults\NJ403CI-TER.doc

Dr. Ira Trocki
August 4, 2006
Page 3

## INDICIA REMOVAL CHECKLIST

After the effective date of the termination of your franchise agreement, you must stop using all items that contain Choice's trademarks.  This checklist is intended to assist you with the removal of items that may contain Choice's trademarks.  This list is not all-inclusive.  All other items bearing Choice's trademarks must be removed.

| | |
|---|---|
| DOT Signs | Name Tags |
| Billboards | Ice Buckets |
| Property Signage | Guest Service Directory |
| Entrance Signage | Sani-Bags |
| Building Signage | Travel Directories |
| Local Yellow Page Ad | Ashtrays |
| Airport Advertising | Phone Plate, Info Caddy |
| Lobby Display/Backdrop | Matches |
| Owner's Plaque | Brochures, Rack Cards, Flyers |
| Rate/Hotel Law Cards | Guest Room Door Signage |
| Stationery/Guest And Office | Do Not Disturb Cards |
| Shower Curtains | Wastebaskets |
| Fire Evacuation Cards | Sanitary Toilet Strips |
| Soap/Amenity Package | Pad/Pencil/Pen |
| In-Room Organizers | Guest Comment Cards |
| Cups/Glasses | Manner In Which Phone Is Answered |
| Van Signs | Voice Mail |
| Folios | |

CHOICE HOTELS
INTERNATIONAL

10750 Columbia Pike
Silver Spring, Maryland 20901

09225+1219

UNITED STATES
POSTAL SERVICE®

Fold at line over top of envelope
right of the return address

CERTIFIED MAIL

7136 4800 3607 0009 9308

Trocki Hotels, LP, et al.
Attn: Dr. Ira Trocki
631 Tilton Road
Northfield, NJ 08225

SUBURBAN PSDC

UNITED STATES
$04.64
32 1A
00243S3346
AUG 04 2006
MAILED FROM ZIPCODE 20901